[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 02-10788
_____

D.C. Docket No. 01-00194-WCO-2
Bkcy No. 99-22320-BKC-RE

In Re:

RONALD JAY COX,

Debtor.

_____

HEMAR INSURANCE CORPORATION OF AMERICA,
ILLINOIS STUDENT ASSISTANCE COMMISSION,

Plaintiffs-Appellees,

versus

RONALD JAY COX,

Defendant-Appellant.

_____

Appeal from the United states District Court
for the Northern District of Georgia

_____

**(July 23, 2003)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and NELSON*,
District Judge.

_____

*Honorable Edwin L. Nelson, United States District Judge from the Northern District of
Alabama, sitting by designation. This case is being decided by quorum due to the death of Judge
Nelson on 17 May 2003. *See* 28 U.S.C. § 46(d).

PER CURIAM:

## I.    INTRODUCTION

Appellant, Ronald Jay Cox (Cox) filed a petition seeking protection from his creditors pursuant to Chapter 7 of the Bankruptcy Code, with the United States Bankruptcy Court for the Northern District of Georgia.  As a part of his petition, he filed an adversary proceeding under 11 U.S.C. § 523(a)(8)[1]; claiming that repayment of his student loans will result in "undue hardship" and seeking a full discharge of his student loan indebtedness.

This Circuit has yet to adopt a specific standard for determining "undue hardship" under § 523(a)(8).  For the reasons stated herein, we adopt the standard set forth by the Court of Appeals for the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987) (per curiam).  Further, we agree with the district court's conclusion that, because Cox will suffer

---

[1]Section 523(a)(8) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, *unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor* and the debtor's dependents.

11 U.S.C. § 523(a)(8) (emphasis added).

no "undue hardship" in repaying his student loan debts, his student loan indebtedness is non-dischargeable.

## II.    BACKGROUND

Ronald Jay Cox has several degrees to his credit, namely an A.A. in business administration from Gainesville Junior College, a B.A. in business administration from North Georgia College, a J.D. from Thomas Cooley Law School, and an LL.M. in taxation from the University of Alabama. In addition to his considerable education, Cox is licensed to practice law in Michigan and Georgia. To fund his education, Cox acquired several student loans. Consequently, he now owes $65,340.35 to the Illinois Student Assistance Commission, $19,511.62 to the Educational Resources Institute, Inc., $18,000 to HEMAR Insurance Corp., and $11,388.91 to the United States Government, for a total of more than $114,000.

After obtaining his LL.M. in taxation, Cox established a law practice in Cumming, Georgia. Unfortunately, Cox's law practice turned out to be an unprofitable venture. As a result, Cox began winding down his failing law practice and secured employment with his brother's landscaping company, earning $24,000 per year. Because of his deteriorating financial situation, on March 19, 2001, Cox filed the underlying loan discharge action pursuant to § 523(a)(8),

3

claiming that he could not pay off his student loan debts without suffering "undue hardship." 11 U.S.C. § 523(a)(8).

At the trial concerning Cox's claim, the bankruptcy court made the following findings: (1) Cox was unable to maintain a minimal standard of living, given the totality of the circumstances; (2) Cox had made good faith efforts to repay his student loans; and (3) given Cox's skills and education, his current inability to repay his student loans is not likely to be a permanent condition.[2] Because the bankruptcy court did not consider Cox's current financial situation to be a "permanent condition," it held that Cox did not make "out a case of undue hardship as contemplated by 11 U.S.C. § 523(a)(8) as would justify total discharge of [his] student loans." However, in light of "the magnitude of the amount of the existing student loans and the accumulation of interest," the bankruptcy court ordered a partial discharge, reducing Cox's student loan indebtedness from approximately $114,000 to $50,000, and established a 25-year plan for repayment of that amount at a 7% annual interest rate.

Cox's creditors appealed the bankruptcy court's decision to the district court. The creditors argued that under the terms of § 523(a)(8), student debt

---

[2]Although the bankruptcy court did not refer to it by name, this three prong analysis of "undue hardship" is consistent with the test set out in *Brunner.* *See* 831 F.2d at 396.

cannot be discharged, even in part, absent a showing of "undue hardship." The district court agreed with the bankruptcy court that Cox had not demonstrated undue hardship. However, the district court held that in the absence of undue hardship, student loan debt could not be discharged, in whole or in part. It thus reversed the bankruptcy court's partial discharge of Cox's student debt. This appeal followed.

## III. STANDARD OF REVIEW.

This Court has jurisdiction over this matter under 28 U.S.C. § 158(d). The district court's and bankruptcy court's factual findings are reviewed for clear error. *Lykes Bros., Inc. v. United States Army Corps of Engr's*, 64 F.3d 630, 634 (11th Cir. 1995). A factual finding is not clearly erroneous unless "this court, after reviewing all of the evidence, [is] left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). This Court conducts a *de novo* review of "determinations of law, whether from the bankruptcy court or the district court." *In re Bilzerian*, 100 F.3d 886, 889 (11th Cir. 1996) (per curiam).

## IV. DISCUSSION

A. *The Brunner test of "undue hardship."*

Although § 523(a)(8) clearly requires a showing of "undue hardship," for

5

discharge of student loan indebtedness in bankruptcy proceedings, the code neglects to define the term. As a result, "[b]ankruptcy courts use a wide variety of tests to determine whether the debtor has demonstrated undue hardship. While these tests have received varying degrees of acceptance, no particular test authoritatively guides or governs the undue hardship determination." *In re: Faish*, 72 F.3d 298, 302 (3d Cir. 1995) (alteration in original) (internal quotation marks omitted). This court has yet to address the appropriate factors to be considered in determining when a debtor has shown "undue hardship." Several of our sister circuits have addressed this issue, however, and adopted the test set forth by the Second Circuit in *Brunner*. *See In re Ekenasi*, 325 F.3d 541, 546–50 (4th Cir. 2003); *In re Brightful*, 267 F.3d 324, 327–28 (3d Cir. 2001); *In re Rifino*, 245 F.3d 1083, 1087–88 (9th Cir. 2001); *In re Roberson*, 999 F.2d 1132, 1135–37 (7th Cir. 1993). *But see In re Long*, 322 F.3d 549, 553 (8th Cir. 2003) (applying "the totality-of-the-circumstances test"); *In re Hornsby*, 144 F.3d 433, 437 (6th Cir. 1998) ("[d]eclining to adopt any one test"). As we find the reasoning of the majority of our sister circuits persuasive, we now hold that the *Brunner* test is the appropriate test for determining "undue hardship."

The *Brunner* court adopted the following three-part test for the "undue hardship" exception to § 523(a)(8):

[to establish "undue hardship," the debtor must show] (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

831 F.2d at 396.

Cox claims the 1998 amendments to the statute, removing the only alternative method of discharging student loans and leaving "undue hardship" as the sole avenue for relief, rendered the *Brunner* test inappropriate because "the *Brunner* test now produces harsh, and sometimes absurd, results." We disagree. As the Seventh Circuit recognized in *In re Roberson*,

The government is not twisting the arms of potential students. The decision of whether or not to borrow for a college education lies with the individual; absent an expression to the contrary, the government does not guarantee the student's future financial success. If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow.

999 F.2d at 1137. Congress's intent to make it harder for a student to shift his debt responsibility onto the taxpayer is clear from the 1998 amendments. Moreover, the *Brunner* test leaves an avenue of relief and is an effective tool for identifying those debtors whose earning potential and circumstances make it unlikely that they will produce the means necessary to repay the student loans

7

while maintaining a minimal standard of living.  This situation, in essence, is what constitutes an "undue hardship" – not the mere inability to pay, but an inability to pay that is likely to continue for a significant time.  The *Brunner* test is an effective tool in analyzing that potential.

B.    *Partial discharge pursuant to § 523(a)(8).*

Although the Bankruptcy Court found, as a matter of fact, that repayment of his student loan indebtedness would not impose an "undue hardship" on Cox, the court granted Cox a partial discharge of his debt.  Whether a partial discharge of student loan indebtedness is possible without a finding of "undue hardship" is a question of first impression for this Court.

The language of § 523(a)(8) clearly and unambiguously provides that the bankruptcy laws do "not discharge an individual debtor from *any* debt" arising from a student loan.  11 U.S.C. § 523(a)(8) (emphasis added).  The only exception is that an individual debtor may be discharged of his student loan indebtedness upon a showing that "excepting such debt from discharge . . . will impose an *undue hardship* on the debtor."  *Id*. (emphasis added).  There is no other language within § 523(a)(8) that could reasonably be construed to permit a discharge, partial or otherwise, absent a finding of "undue hardship."  "[T]he duty of interpretation does not arise" for a statute when the plain language of the statute admits to only

8

one meaning. *Caminetti v. United States* 242 U.S. 470, 485 (1917).

Cox contends this construction of § 523(a)(8) goes against Congress's intent that bankrupt debtors be given a "fresh start." However, the history of § 523(a)(8) is consonant with our interpretation. Shortly after Congress established the Guaranteed Student Loan Program under the Higher Education Act of 1965, students began discharging their educational obligations through the Bankruptcy Act. Consequently, in 1976 Congress enacted Section 493A of the Education Amendments of 1976, which provided:

> A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act *only if such discharge is granted after the five-year period* (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, *except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship* on the debtor or his dependents.

Education Amendments of 1976, Pub. L. No. 94-482, 90 Stat. 2081, 2141 (codified at 20 U.S.C. § 1087-3 (1976) (repealed 1978)) (emphasis added). In 1978 the essence of Section 439A was re-codified in § 523(a)(8). Congress subsequently amended § 523(a)(8) in 1979, 1984, and 1990, with each amendment further limiting the dischargeability of student loans. Finally, in 1998 Congress

9

left "undue hardship" as the only possible avenue for a debtor to obtain a discharge of student loan indebtedness. *See* 11 U.S.C. § 523(a)(8). Considering the evolution of § 523(a)(8), it is clear that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness.

Furthermore, there is no evidence of an intent to permit judicially created exceptions to § 523(a)(8) via the "fresh start" principle. According to the plain meaning of § 523(a)(8), a debtor cannot obtain a discharge of student loan indebtedness without a finding of "undue hardship."

Cox contends that the bankruptcy court's equitable powers under 11 U.S.C. § 105(a) allow it to construct an equitable remedy, namely a partial discharge, even if the "undue hardship" burden is not met.[3] The bankruptcy court's equitable powers, however, do not allow it to override the specific statutory language found in § 523(a)(8). It is a well settled rule of statutory interpretation that "[w]here

---

[3]Cox contends that, although the bankruptcy court applied a "totality of the circumstances" analysis rather than the *Brunner* test, the bankruptcy court's factual findings demonstrate that he met the *Brunner* test. Although the bankruptcy court did not explicitly name the "undue hardship" standard it employed, the record clearly reflects that it was using the three-prong *Brunner* test. Using this test, the bankruptcy court concluded that Cox did not establish undue hardship to justify total discharge of his loans. In proceedings before the district court, Cox argued the Bankruptcy Court's decision was "correct as a matter of law and fact" and he failed to file any kind of cross-appeal claiming the bankruptcy court's findings were clearly erroneous. Because the equitable principles of judicial estoppel prevent Cox "from deliberately changing positions according to the exigencies of the moment," we decline to disturb the findings below in these circumstances. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002).

there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). Because the specific language of § 523(a)(8) does not allow for relief to a debtor who has failed to show "undue hardship," the statute cannot be overruled by the general principles of equity contained in § 105(a). To allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of § 523(a)(8) mandates would be "tantamount to judicial legislation and is something that should be left to Congress, not the courts." *In re Mallinckrodt*, 260 B.R. 892, 904 (Bankr. S.D. Fla. 2001), *rev'd*, 274 B.R. 560 (S.D. Fla. 2002)..

AFFIRMED.