**Dianna Marie ULM, Plaintiff,**

v.

**EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Defendant.**

No. CV 403–157.

United States District Court, S.D. Georgia, Savannah Division.

Jan. 12, 2004.

R. Wade Gastin, Savannah, GA, for Plaintiff.

Matthew E. Mills, Inglesby, Falligant, Horne, Courington & Chisholm, PC, Savannah, GA, for Defendant.

### MEMORANDUM AND ORDER

NANGLE, District Judge.

Appellant Educational Credit Management Corporation ("ECMC") appeals from the final judgment of the United States Bankruptcy Court for the Southern District of Georgia granting partial discharge of debtor Dianna Marie Ulm's student loan debts in her Chapter 13 bankruptcy case, No. 99–40282–JDW, pursuant to her Adversary Complaint, No. 02–04124–JDW. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).

### I. Background

The following undisputed facts are derived from the record on appeal. Ulm is a thirty-five-year-old single mother of one eleven-year-old daughter. Between 1994 and 1998, Ulm obtained a series of fourteen government-backed student loans in order to finance her education at Armstrong Atlantic State University ("Armstrong") in Savannah, Georgia. In obtaining the loans, she indicated that she expected to graduate in June 1998.

Ulm did not graduate in June 1998, but she continued to pursue her education without requesting a deferral of payment of her student loans. When she received letters stating that the loans were due and payable, she became concerned that her wages could be garnished. In January 1999, Ulm filed a Chapter 13 bankruptcy petition in which she listed her student loan debts and other unsecured debts, thereby obtaining refuge in the automatic stay provided to bankruptcy filers in 11 U.S.C. § 362(a).

During the pendency of her Chapter 13 case, as her annual income fluctuated between $13,000 and nearly $21,000, Ulm made required monthly payments of $76.00 to the Chapter 13 Trustee in accordance with her confirmed plan of reorganization. In the meantime, Ulm completed her course work at Armstrong in December 1999 and received a bachelor's degree in art. In July 2002, after working at various jobs while unsuccessfully attempting for many months to obtain employment related to her degree, she was hired by the Savannah College of Art and Design as a permanent receptionist at $12.00 per hour,

or approximately $25,000.00 per year. On March 11, 2003, she received a general discharge of her unsecured debts.

Before her general discharge was entered, Ulm filed an adversary proceeding seeking to have her student loan debt discharged as an undue hardship pursuant to 11 U.S.C. § 523(a)(8). She listed her monthly net income as $1,925.00, which amount included $110.00 attributed to her 2002 federal income tax refund received in 2003. The amount of that refund was approximately $3,000. She listed her monthly expenses at $1901.00, which amount included $231.00 attributed to payments for day care for her eleven-year-old daughter and $45.00 for cable television.

After a hearing on the merits in her adversary case, the bankruptcy judge orally entered findings of fact and conclusions of law, announced that no written findings and conclusions would be issued, and ruled that a portion of Ulm's student loan debt was dischargeable. On July 8, 2003, an Order discharging $20,000 of Ulm's total student loan debt of $50,055.98 was entered. This appeal followed.

## II. Legal Standards

■ Whether "undue hardship" exists is a mixed question of fact and law. *Educ. Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 816 (N.D.Fla.2003). This Court reviews the Bankruptcy Court's factual findings for clear error. *Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.)*, 951 F.2d 1223, 1228 (11th Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ This Court reviews *de novo* the Bankruptcy Court's conclusion that Ulm's student loans impose an undue hardship. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990); *see also Stanley*, 300 B.R. at 816 ("[A]pplication of the proper legal standard to the facts as found by the Bankruptcy Court is subject to plenary review." (citing *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1453 (11th Cir.1989))).

A Chapter 13 debtor receives two primary benefits-protection of the automatic stay, *see* 11 U.S.C. § 362(a), and a general discharge of all debts provided for by the plan, *see id.* § 1328(a). Certain debts, however, are excepted from the general discharge. Among those exceptions are government-backed educational loans. *Id.* §§ 1328(a)(2), 523(a)(8).

Student loan debt is nondischargeable absent "undue hardship." *Id.* § 523(a)(8). Specifically, a discharge in bankruptcy does not discharge an individual debtor from any debt

> for an educational ... loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an *undue hardship* on the debtor and the debtor's dependents.

*Id.* (emphasis added).

■ To establish "undue hardship," the debtor must show that: (1) given the debtor's current income and expenses, the necessity of making monthly student loan payments will prevent her from maintaining a minimal standard of living for herself and her dependents if she is forced to repay the loans; *and* (2) additional circumstances exist which strongly suggest that

the debtor's current inability to pay will extend for a significant portion of the repayment period of the loan; *and* (3) the debtor has made good faith efforts to repay the loan. *Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1241 (11th Cir.2003) (adopting three-part "undue hardship" test first articulated in *Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752 (S.D.N.Y.1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987) (per curiam)).[1]

## III. Discussion

The first issue on appeal is whether the Bankruptcy Court erred in concluding that Ulm satisfied the first *Brunner* requirement. Under that requirement, a debtor seeking discharge bears the burden to show that, given her current income and expenses, the necessity of making monthly loan payments prevents her from maintaining a minimal standard of living for herself and her dependents. *Cox*, 338 F.3d at 1241.

With respect to the first *Brunner* requirement, the bankruptcy judge opined:

The first two components of the *Brunner* analysis are more or less the same thing—a minimal standard of living that will persist. . . .

For me to decide how much someone should have to live to get just above the hardship level is a most difficult matter. . . . [H]ardship is not going to be in my estimation something that takes the joy out of life for somebody. I think it's expected that the frills perhaps are gone. But living every day in doubt, in fear, in economic distress, on the economic edge (and to think about doing that for twenty years) is beyond hard-

ship to me. That is an intolerable burden.

. . . [T]hese . . . words. . . . would perhaps give you here, or anybody on appeal who considers this case, some insight into what I'm thinking about is hardship. I think of hardship as life that is devoid of a lot of the luxuries and frills that are so much in evidence all around us. I don't think a person has to be stressed to the point where they don't know whether there will be a financial tomorrow or not. I don't think a person has to be stressed to the point where they can't buy tires for their cars, where they can't take a child to the ice cream parlor. And I don't think it should be to the point where they can't have cable television.

My sense of hardship . . . may not be as tight a threshold as some of the language I have heard cited from cases. So, I will tell you that, and I'll tell you that now for whatever guidance that may be. And if there is some adjustment that needs to be made in how I allocate hardship, then so be it.

Tr. 195–97.

The Bankruptcy Court's only specific findings relating to Ulm's financial situation were as follows:

Now, operative facts: The debtor is currently employed at the rate of $25,000 a year. . . . [In 1998] she earned [$7,688]. [In 1999,] $21,000. [In 2000,] $13,000. [In 2001,] she earned $14,000. [In 2002,] $16,000. And this year, now [2003], the debtor is employed as a receptionist at the Savannah College of Art and Design with medical benefits and in a pretty stable situation, earning $25,000 a year.

---

1. Both Ulm and ECMC relied on applicability of the *Brunner* test. After judgment was entered, the Eleventh Circuit rendered the *Cox* decision adopting the *Brunner* test as the applicable standard for determining undue hardship.

Now, she's finally reached a level of hopefully earning stability. It looks like now she is in a position to provide for herself and for her daughter a decent standard of living. And it looks like she's in the position now to allocate some amount of money to repayment of this student loan.

Tr. 206–08.

Lacking specific comparative findings and analysis, this Court cannot effectively review the Bankruptcy Court's application of the first *Brunner* requirement. It appears from the record that Ulm's monthly income may be sufficient to make student loan payments if the income amount as listed were to be adjusted to take into account (1) that Ulm's monthly income attribution of $110.00 to her income tax refund appears to have been understated by $140.00 (in that her refund was approximately $3,000.00), (2) that her monthly expenses include one $45.00 expense that is questionable as to its necessity in maintaining a minimal standard of living (cable television), and (3) that an option is available to Ulm that could provide for adjustment of her student loan payments in accordance with her annual income (William D. Ford program).

▬ This Court has no authority, however, to make independent findings of fact concerning the actual amount of Ulm's income versus how much she is able to pay her student loan creditors. *Club Assocs.*, 951 F.2d at 1228. Normally, if a bankruptcy court is silent with respect to necessary factual determinations, remand would be called for. *See id.* (" 'If the bankruptcy court's factual findings are silent or ambiguous as to an *outcome determinative factual question,* the district court . . . must remand the case to the bankruptcy court for the necessary factual determination.' " (quoting *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1384

(11th Cir.1990) (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987)))) (emphasis added). In this case, however, because a factual determination regarding this aspect of the *Brunner* test is not ultimately outcome determinative in light of the discussion and conclusions that follow, a remand is not necessary. *See Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir.2001) (finding deficient state of record as to first "undue hardship" requirement of no concern in light of debtor's failure to meet burden of proof under second requirement).

The second issue on appeal is whether the Bankruptcy Court erred in concluding that Ulm satisfied the second *Brunner* requirement. Under that requirement, a debtor seeking discharge bears the burden to demonstrate the existence of additional circumstances which strongly suggest that any current inability to pay will extend for a significant portion of the loan repayment period. *Cox*, 338 F.3d at 1241.

Addressing the second *Brunner* requirement, the bankruptcy judge opined:

[J]ust because a debtor is . . . unable to pay anything back now, should that be the case, that's not enough. You've got to . . . make sure that [the inability to pay] will persist out into the future. . . . *[F]or considerable time in the future, we look into a crystal ball* to see what the debtor's circumstances will be. . . . [F]or loans involving college education that produce college graduates, I tend to think twenty years is about as far out as I think we should look. And heaven knows it is as far out as we can look with any degree of certainty. . . . And *for me to portend here that I can look out twenty years with any reliability borders on ludicrous, but isn't quite lu-*

*dicrous, because I think I have to.* I think I have to try to do that.

Tr. 195–96 (emphases added).

■ The Bankruptcy Court's reading of the second *Brunner* requirement is belied by the language of that requirement. Applying the *Brunner* test does not necessarily require future income predictions. Indeed, the requirement portends to alleviate the problem of predicting future income by conditioning undue hardship upon the present existence of circumstances—circumstances in *addition* to a present lack of ability to pay—that strongly suggest an inability to pay the loan over an extended period of time, thereby "more reliably guarantee[ing] that the hardship presented is 'undue.'" *Brunner,* 831 F.2d at 396; *see also Ballard v. Virginia (In re Ballard),* 60 B.R. 673, 675 (Bankr.W.D.Va. 1986) ("A finding of undue hardship is reserved for the exceptional case and requires the presence of 'unique' or 'extraordinary' circumstances which would render it unlikely that the debtor would ever be able to honor [her] obligations."). The actual requirement is thus more restrictive than the Bankruptcy Court's perception of the requirement. The actual requirement is also more easily applied, in that no crystal ball is needed.

■ In this case, even if sufficient factual findings had established that Ulm currently lacks the ability to make her student loan payments, her present circumstances do not strongly suggest that any such inability to pay would continue indefinitely. In the first place, she has established a foundation for financial stability: a college degree, a stable job, mental and physical health, resourcefulness, youth, and a monthly income that is greater than the income she received during the time that she was making payments to the Chapter 13 Trustee. In addition, her present circumstances indicate that the amount of her *disposable* income will rise in the future, in that her only dependant is eleven years old and the presently necessary monthly child care expense of $231.00 will not remain necessary for many more years. Finally, there is no indication that more affordable, income-sensitive repayment terms are unavailable to her.

Therefore, it is clear that the "additional circumstances" required under the second *Brunner* requirement are absent from this case. The Bankruptcy Court erred in concluding that Ulm satisfied the second *Brunner* requirement. Accordingly, reversal is warranted on this issue.

The third issue on appeal is whether the Bankruptcy Court erred in concluding that Ulm satisfied the third *Brunner* requirement to show good faith efforts to repay student loans.[2] Under that requirement, a debtor bears the burden to demonstrate good faith efforts to repay student loans. *Cox,* 338 F.3d at 1241. "[A] debtor may not 'willfully or *negligently* cause [her] own default, but rather [her] condition must result from factors beyond [her] *reasonable* control.'" *In re Mallinckrodt,* 274 B.R. 560, 568 (S.D.Fla.2002) (emphases added) (quoting *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993)).

**2.** The relevance of the third *Brunner* requirement to an "undue hardship" determination is questionable. Where true undue hardship exists (as determined by satisfaction of the first and second *Brunner* requirements), even an outright admission by a debtor that she has been running from student loan creditors should not prevent application of the straightforward § 523(a)(8) exception. On the other hand, a debtor's unquestioned good-faith Herculean efforts to repay student loan debt, while commendable, should not be permitted to cloud the issue in determining whether undue hardship exists. Nonetheless, in that the Eleventh Circuit recently adopted the *Brunner* test as a whole, this Court reviews the Bankruptcy Court's application of the third *Brunner* requirement.

In this case, the Bankruptcy Court focused on two matters—that neither the fact and timing of Ulm's bankruptcy filing nor her failure to apply tax refunds received during the pendency of the Chapter 13 case to reduce her student-loan debt constituted a bad-faith attempt to avoid paying her student loans. The Bankruptcy Court's findings and conclusions regarding the third *Brunner* requirement were as follows:

> Let me focus on the third element of the *Brunner* test. This debtor's good-faith effort to repay the loan, much has been made of that. And it has completely—that argument in my view has completely missed the mark. This debtor testified that she was believing that she was going to have her wages garnished in January of 1999 when this Chapter 13 case was filed. And she says that is why she filed this Chapter 13 case.
>
> It's true this case was aimed at dealing with [the educational-loan] debt. But the main reason for dealing with this debt was to try to keep the creditor from interrupting the income by wage garnish. We know—those of us who have had some experience with this— that wasn't really about to happen. But I'm not satisfied that this debtor knew that. *I'm not satisfied that this Chapter 13 case was filed, when it was, for any reason other than the reason stated to us by the debtor here under oath.* For the last several years, she has made payments in that case, and paid $1,200 to the student loan creditor towards the student loan.
>
> There's much made by the fact that she didn't made any extra payments to the … student loan creditor along the way from tax refunds. And honestly, I don't have any evidence on her financial circumstances at the time of the receipt of those tax refunds one way or the

other, but I know from my own personal experience gathered as a citizen and in cases here in this court, it rarely happens that debtors in this court get tax refunds and have no other financial obligations to apply those refunds to. A lot of people live from refund to refund, and but for tax refund[s], they wouldn't make it from year to year.

> So, the notion [that] a tax refund should be deemed as fun money or extra money doesn't naturally follow in my estimation without some much more substantial proof regarding the financial circumstances at the time of the tax refunds.… [O]ne of the tax refunds was spent … partly financing a ten-year-old car. That hardly sounds like luxury money to me.… *[T]he fact that tax refunds aren't paid over to a creditor is hardly evidence of bad faith in my estimation.* And I don't have any evidence here to suggest a different conclusion that should be drawn from the mere fact that tax refunds weren't paid over to this creditor. So, the third prong of the *Brunner* test is not present.

Tr. 199–201 (emphases added).

■■■ Lack of bad faith, however, is not the applicable test. Making good-faith efforts to repay requires making efforts to satisfy the debt by all means—or at least by *some* means—within the debtor's reasonable control. Here, outside her bankruptcy case, Ulm made no efforts whatsoever to repay her student loan debt: none prior to filing bankruptcy, none from her income tax refunds received during her bankruptcy case, and none after her payments to the Chapter 13 Trustee ceased. She made no effort to seek out options so as to adjust her repayment schedule. All of these possibilities were within her reasonable control. That she can explain her reasons for not making efforts to repay,

thereby demonstrating absence of bad faith, does not satisfy the third *Brunner* requirement. Thus, even if reversal of the undue hardship conclusion were not warranted on the second *Brunner* requirement, reversal would be warranted on this issue.

## IV. Conclusion

Ms. Ulm has done nothing wrong. To the contrary, for many years she has done much that is unquestionably right. The bankruptcy judge's oral observations attest to her tenacity and sense of responsibility.

Dischargeability of student loan debt, however, is subject to legal inquiries mandated by statute and binding case law. The only possible avenue for a debtor to obtain a discharge of student loan indebtedness is through a conclusion that undue hardship exists. *See, e.g., Cox,* 338 F.3d at 1243 ("[T]here is no evidence of an intent to permit judicially created exceptions to § 523(a)(8) via the 'fresh start' principle."). In this Circuit, the avenue for determining undue hardship is the *Brunner* test.

Because no additional circumstances strongly suggest that Ulm will be unable to make student loan payments for a significant portion of the repayment period, she has not shown the existence of undue hardship. Accordingly, no portion of Ulm's student loans should have been discharged pursuant to the undue hardship exception. The judgment of the Bankruptcy Court is REVERSED and Ulm's loans are reinstated.

**So ORDERED.**