In re Brent A. BOYKIN, Sonya
L. Boykin, Debtors.

Brent A. Boykin, Sonya L.
Boykin, Plaintiffs,

v.

American Services Collection, Costep, OSLA Student Loan Servicing, Educational Credit Management Corporation, Oklahoma State Regents for Higher Education, Defendants.

Bankruptcy No. 03–52112–JDW.
Adversary No. 03–5165.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

April 26, 2004.

Gail C. Robinson, Warner Robins, GA, for Debtors.

Thomas W. Joyce, Macon, GA, for Educational Credit Management Corp.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Debtors' complaint to determine dischargeability of student loans. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). The Court held a trial on March 3, 2004. After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor Brent Boykin attended Oklahoma City Community College from August 1990 to May 1992 and from January 1996 to May 1996. He attended Southwestern Assemblies of God in 1992 and Southwestern Christian Academy in 1994. He also attended San Antonio College in 1996. Most recently, he attended Macon State College in 1998 and 1999. Despite his numerous efforts at post-secondary education, he never received a degree. Debtor Sonya Boykin attended Oklahoma City Community College from January 1996 to May 1996. She did not receive a degree.

In the course of pursuing their educations, the Boykins took out at least twelve student loans. Four loans were held by Texas Guaranteed Student Loan Corporation ("TGSLC") and four were held by Oklahoma State Regents for Higher Education ("OSRHE"). Their indebtedness to these two creditors totaled approximately $44,000. The Boykins entered

into agreements with TGSLC and OS-RHE, so that they would be responsible for repaying only one of TGSLC's and two of OSRHE's loans. In doing so they reduced their total indebtedness to those two creditors to approximately $5,500, and agreed to enroll in the William D. Ford Federal Direct Loan Program[1] to repay the loans.

The remaining four loans-and the only loans at issue in this proceeding-are held by Defendant Educational Credit Management Corp. ("ECMC"). The total amount due on the loans, which are solely in the name of Mr. Boykin, is $7,038.21. They are accruing interest at a rate of 4.32 percent. Although the Boykins have made no payments on any of their loans, they stayed in touch with the lenders and have received several forbearances.

Mr. Boykin is 33 years old and has no physical disabilities. He does suffer from a learning disability, disgraphia, which interferes with his ability to write. Mr. Boykin has maintained steady employment through various part-time jobs over the past six years. In 1998 and part of 1999, he worked at WalMart. He left WalMart in 1999 because he found a better paying job working for a contractor at Robins Air Force Base. He worked at the base from October 2000 through March 2001, when he was laid off because the contractor began experiencing financial difficulties. Mr. Boykin even accepted a pay cut in an effort to keep that job. It was the only job he has ever held that paid more than $8 per hour. After being laid off, Mr. Boykin worked briefly at Save A Lot warehouse, and then he worked at a nursing home for a year. He generally worked part-time hours at the nursing home, but when it was understaffed, he received additional hours.

Currently Mr. Boykin holds two part-time jobs. For the past year he has worked as an in-store marketing associate at Sears, working 12 to 18 hours per week. He has temporarily been reassigned as a stocker. After filing his bankruptcy petition he secured additional employment as a stocker at the discount store Little Bucks, where he works 28 to 30 hours per week. He earns $6.20 per hour at Sears and $8.00 per hour at Little Bucks. He has been unsuccessful in finding higher paying work because such jobs generally require some writing ability, and his writing skills are impaired by disgraphia.

Mrs. Boykin works approximately 32 hours per week as an optical assistant at Sears and earns $7.80 per hour. She has worked there about 2½ years. Prior to that, she was a homemaker. Mrs. Boykin is currently on light duty at Sears because she suffers from back and shoulder problems related to a degenerative disc disease. The problems caused her to miss two months of work last year and will require surgery no later than August or September of this year.

The Boykins have two school-age children: an 8–year–old daughter, Tiffany Boykin, and a 7–year–old son, Brent Boykin, II. Neither child has any independent source of income. Both children attend public school. The family receives no government assistance. However, the children are enrolled in PeachCare, a state-assisted medical program, which covers all

---

1. The Ford program offers four repayment options, including the income contingent repayment plan, under which the debtor's payments will never exceed 20 percent of his disposable income. For purposes of the Ford program, disposable income is the amount of the debtor's income that exceeds the poverty level. If the debtor's income is below the poverty level, his payments are $0. The amount of the payments is reevaluated each year. Any balance remaining after 25 years is forgiven.

their medical costs at an approved provider.

Over the past six years, the family's income has remained relatively steady. In 1999, they earned $22,020. In 2000, they earned $23,970. In 2001, they earned $20,294. In 2002, they earned $25,341. Mr. Boykin nets approximately $380 per month at Sears. At the time of the trial, he had not yet received a paycheck from Little Bucks. However, based on working 28 hours at $8 per hour, he will gross approximately $970 per month. Assuming 25 percent of that is deducted for taxes and social security, he will gross approximately $727 per month. Mrs. Boykin earns approximately $430 biweekly, which amounts to $931 per month. Thus, the family's average monthly income is $2,038.

The Boykins live a very frugal life. They live in a 1968, three-bedroom, one-bathroom trailer. They do not have cable television or cellular phone service, their last vacation was paid for by Mrs. Boykin's parents, and they make do with only one functioning vehicle. While they own a car, it cannot be driven without repairs that will cost approximately $1,000. Because the Boykins cannot afford to have it repaired, Mrs. Boykin's parents purchased a 1999 Ford Taurus in November 2003 for the Boykins' use.

Based on the testimony of Mrs. Boykin, the Boykins' Schedule J, and their answers to interrogatories, the Court finds that the Boykins' monthly expenses average as follows: $375 month for rent; $300 for groceries; $120 for electricity; $30 for water, sewer, and garbage; $35 for telephone; $50 for clothing and shoes; $300 for medical expenses arising from Mrs. Boykin's dental and back problems and Mr. Boykin's emergency appendectomy; $15 for PeachCare, a state-assisted health insurance program for the children; $270 to Mrs. Boykins' parents for the Ford Taurus

and for auto insurance; and $80 for gasoline. This totals $2,175.

## Conclusions of Law

A debtor cannot discharge government-backed student loans in bankruptcy "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C.A. § 523(a)(8) (West Supp.2003). The Bankruptcy Code does not define "undue hardship." In the Eleventh Circuit, the issue of undue hardship is analyzed by applying the *Brunner* test *Hemar Ins. Corp. of Am. v. Cox* (*In re Cox*), 338 F.3d 1238, 1241 (11th Cir.2003).

 Under the *Brunner* test, the debtor must show the following:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting *Brunner v. New York Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987)). The circuit court did not provide any guidance for analyzing each prong of the *Brunner* test. However, the court noted that while Congress has made student loan discharges progressively harder to obtain, "the *Brunner* test leaves an avenue of relief and is an effective tool for identifying those debtors whose earning potential and circumstances make it unlikely that they will produce the means necessary to repay the student loans while maintaining a minimal standard of living." *Id.* at 1242. Thus, an undue hardship is "not the mere inability to pay, but *an inability to pay that is likely to continue*

*for an significant time." Id.* (emphasis added).

This is consistent with the Tenth Circuit Court of Appeals approach to *Brunner,* which it recently adopted as the test for undue hardship. *ECMC v. Polleys,* 356 F.3d 1302 (10th Cir.2004). In doing so, it noted that "courts employing the *Brunner* analysis, however, appear to have constrained the three *Brunner* requirements to deny discharge under even the most dire circumstances." *Id.* at 1308 (collecting cases). "These applications show that an overly restrictive interpretation of the *Brunner* test fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor and can cause harsh results for individuals seeking to discharge their student loans." *Id.* (internal citations omitted). In adopting *Brunner,* the court stated that "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Id.* at 1309.

■ **1. Minimal standard of living.** The first element of the *Brunner* test "requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993). Currently, the Boykins' expenses exceed their income. They earn approximately $2,038 per month, and have expenses of approximately $2,175, which leaves a shortfall of $137. None of their current expenses are unreasonable. In fact, the Boykins go without many of the incidental pleasures of life, such as cable television. Because they are currently unable to maintain a minimum standard of living, even in the absence of any student loan payments, they have satisfied prong one of *Brunner.*

■ **2. Likelihood that state of affairs will persist.** The second element of *Brunner* requires the debtor to show additional circumstances that will prevent him from maintaining a minimal standard of living for the majority of the repayment period if obligated to repay his student loans. This element is a difficult one to prove as it requires a showing that the debtor will be completely unable to pay his student loan debt in the future for reasons beyond his control. *ECMC v. Carter,* 279 B.R. 872, 877 (M.D.Ga.2002). It requires "the present existence of circumstances-circumstances in *addition* to a present lack of ability to pay-that strongly suggest an inability to pay the loan over an extended period of time." *Ulm v. ECMC,* 304 B.R. 915, 921 (S.D.Ga.2004). "However, in applying this prong, courts need not require a 'certainty of hopelessness.' Instead, a realistic look must be made into debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like. Importantly, 'courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism.'" *Polleys,* 356 F.3d at 1310 (quoting Robert F. Salvin, *Student Loans, Bankruptcy, and the Fresh Start Policy: Must Debtors Be Impoverished to Discharge Educational Loans?,* 71 Tul. L.Rev. 139, 197 (1996)).

■ In this case, the Boykins received no apparent benefit from their student loans. Neither one was able to earn a college degree. Nothing in their current situation or their past work histories indicates that they have any skills that would allow them to rise beyond the minimum wage job market. The Boykins are neither skilled nor well-educated, and they have two young children. In addition, Mrs. Boykin has had some back problems and Mr. Boykin suffers from disgraphia; but, proof of disability is not an element of

*Brunner.* *Polleys,* 356 F.3d at 1311. "[A]lthough a permanent medical condition will certainly contribute to the unlikelihood of a debtor earning enough money to repay her student loan debt, it is by no means necessary if the debtor's situation is already bleak." *Id.* The Boykins' situation is bleak. To conclude that debtors who have been unable to acquire any marketable skills, despite trying to do so, could substantially-or even moderately-increase their earning potential is unrealistically optimistic. The Court is persuaded that the Boykins' circumstances will prevent them from ever being able to make payments on their student loans while maintaining a minimal standard of living.

■■■■■ **3. Good faith efforts to repay.** The third element of the *Brunner* test generally is "measured by [the debtor's] efforts to obtain employment, maximize income, and minimize expenses." *Roberson,* 999 F.2d at 1136. It does not require a showing of actual payments. *McGinnis v. Pennsylvania Higher Educ. Assistance Agency (In re McGinnis),* 289 B.R. 257, 267 (Bankr.M.D.Ga.2003). However, it "requires making efforts to satisfy the debt by all means-or at least *some* means-within the debtor's reasonable control." *Ulm,* 304 B.R. at 922. Furthermore, it includes consideration of "whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship." *Polleys,* 356 F.3d at 1309.

■■■ The Court is persuaded that the Boykins have endeavored to maximize their income and minimize expenses. Mr. Boykin works two part-time jobs, and Mrs. Boykin has continued to work more than 30 hours per week despite back problems. As noted above, they live a no-frills life, without any allocation in their budget for recreation and entertainment.

Although they have made no payments on their student loans, they did not seek to discharge their loans as soon as the first payment came due, and they kept in contact with the lenders and obtained forbearances, which have been exhausted. *See id.* at 1312. The Boykins also settled with two of their lenders and discussed a settlement with ECMC. Their "efforts to cooperate with [their] lenders show that [they] were acting in good faith in working out a repayment plan." *Id.*

■■■ ECMC has argued that the Boykins' refusal to include its loans in the Ford program and participate in the income contingent repayment plan ("ICRP")[2] demonstrates a lack of good faith. Generally, refusal to participate in the ICRP is not conclusive proof of lack of good faith. This Court has previously stated that a debtor whose situation is hopeless, such that he will never be able to make any payments on his student loans, should not be forced into a repayment program that will burden his creditworthiness for 25 years and result in an income tax liability upon cancellation of the debt. *Johnson v. ECMC (In re Johnson),* No. 01–51451, Adv. No. 02–5068, slip op. at 21 (Bankr.M.D.Ga. March 23, 2004) (Walker, J.). As discussed under prong two, the Court is persuaded that the Boykins will never be able to maintain a minimal standard of living and make student loan payments. Their intent to enter into the Ford program to repay substantially reduced liabilities to their other student loan creditors while refusing to place their full liability to ECMC under the program could be seen as bad faith. After all, the Boykins have asserted, and the Court agrees, that they are presently unable to make any student loan payments. Thus, when entering the Ford program they would be com-

**2.** *See supra* note 1.

pelled to proceed under the ICRP, which computes the monthly payment based on income rather than loan balance. So, the addition of ECMC's loans would not affect the amount due.

However, the Court must also consider whether the Boykins acted in good faith in seeking a discharge of their student loans. "[T]here is no indication that [the Boykins are] 'attempting to abuse the student loan system by having [their] loans forgiven before embarking on lucrative careers in the private sector.'" 356 F.3d at 1312 (quoting *In re Cheesman*, 25 F.3d 356, 360 (6th Cir.1994)). They are not trying to horde the financial benefits of their education for themselves while denying the lenders repayment. On the contrary, their efforts at education have resulted only in financial liabilities. The indicia of good faith in this case outweigh any hint of bad faith that could be inferred from the Boykins' refusal to pay ECMC through the Ford program. Consequently, the Boykins have satisfied the third prong of *Brunner*.

The Boykins are not currently able to maintain a minimal standard of living while repaying their student loans. Furthermore, they lack the skills necessary to better their position for the duration of the student loan repayment period. Instead, they face an uncertain future of low-pay-ing, dead-end jobs. It is because of their efforts to break away from such a future that this case is before the Court. Although they have been unable to make any payments on their loans, their frugal lifestyle and their communications with their creditors show a good faith effort to repay their student loans. The Court, therefore, concludes that repayment of their student loans would create an undue hardship, and the debt owed to ECMC should be discharged.

An Order in accordance with this Opinion will be entered on this date.

## ORDER

In accordance with the Memorandum Opinion entered on this date, the Court hereby finds that repayment of the student loans owed by Debtors Brent and Sonya Boykin to Educational Credit Management Corporation ("ECMC") creates an undue hardship on Debtors and their dependants and, thus, are dischargeable. The Court hereby enters judgment for Debtors.