Brent **BOYKIN** and Sonya Boykin, Debtors,

**Educational Credit Management Corporation, Defendant–Appellant,**

v.

**Brent Boykin and Sonya Boykin, Plaintiffs–Appellees.**

No. 5:04–CV–164–2(DF).

United States District Court, M.D. Georgia, Macon Division.

Aug. 30, 2004.

Gail Charline Robinson, Warner Robins, GA, for Debtors.

Thomas W. Joyce, Macon, GA, for Educational Credit Management Corp.

## *ORDER*

FITZPATRICK, District Judge.

Before the Court is an Appeal (tab # 3) from an order of the United States Bankruptcy Court for the Middle District of Georgia, Macon Division, discharging Appellees' student loan debt in the amount of $7,038.21, held by Appellant Educational Credit Management Corp. ("ECMC"). On appeal, Appellant contends that the Bankruptcy Court erred in concluding that Appellees' repayment of their student loans to ECMC would constitute an "undue hardship," as that term is used in 11 U.S.C.A. § 523(a)(8) (West 1993).

Having considered the record, the briefs filed by both parties, and the relevant case law, this Court holds that: (1) Appellees do not satisfy the elements of the *Brunner* test for determining "undue hardship" as articulated by Eleventh Circuit precedent, and thus, (2) Appellees are not entitled to a discharge of their student loans held by Appellant ECMC.

## I. FACTUAL BACKGROUND

Appellee Brent Boykin, 33, attended five different colleges from 1990 to 1999. Despite his efforts, however, he never obtained a college degree. His wife, Appellee Sonya Boykin, attended one community college during 1996 and likewise did not receive a degree.

During the course of their educational pursuits, the Boykins took out twelve student loans. Eight of these loans were held by two creditors, totaling approximately $44,000. The Boykins entered into a settlement agreement with these creditors by which they reduced their indebtedness to approximately $5,500. They also agreed to enter into the William D. Ford Federal Direct Loan Program to repay the loans.

The remaining four loans, and the only loans at issue in this appeal, are held by Appellant ECMC. The total amount due on those loans is $7,038.21. It is these loans that the Bankruptcy Court determined should be discharged.

While Mr. Boykin is not physically disabled, he does suffer from disgraphia, a learning disability that interferes with his ability to write. Mrs. Boykin is currently on light duty at her job due to a degenerative disc disease that caused her to miss two months of work last year and will require surgery this year. Their combined income over the past several years

has ranged from $20,000 to $25,000. The Bankruptcy Court found that the Boykins' earn an average monthly income of $2,038, while their average monthly expenditures total $2,175. The court also noted that the family does not spend money on such luxuries as cable television or cellular telephone service.

Mr. Boykin holds two part-time jobs. He works 12–18 hours a week at Sears as a marketing associate and 28–30 hours a week at Little Bucks discount store. The job at Sears pays $6.20 an hour. The job at Little Bucks pays $8.00 an hour. Mrs. Boykin earns $7.00 an hour as an optical assistant at Sears. She works approximately 32 hours a week. In addition, the Boykins have two minor children, ages 8 and 7.

The Boykins have not made any payments on their student loan debt, but they have received several forbearances from other lenders.

## II. STANDARD OF REVIEW

When entertaining an appeal from a bankruptcy court, district courts are entitled to "affirm, modify, or reverse a bankruptcy court's ... order" and will accept its findings of fact unless those findings are clearly erroneous. Fed. Bankr.R. 8013 (West 1984 & Supp.2004); *See In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990); *see also In re Club Assocs.*, 951 F.2d 1223, 1228 (11th Cir.1992). A district court is not authorized to make independent findings of fact. *See In re Sublett*, 895 F.2d at 1384. Moreover, if a bankruptcy court's findings are "silent or ambiguous as to an outcome determinative factual question," remand to the bankruptcy court is required. *Id.* (quoting *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987)).

In contrast, conclusions of law, including a bankruptcy court's interpretation and application of the Bankruptcy Code, are reviewed *de novo*. *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990). This Court, therefore, owes no deference to a bankruptcy court's interpretation of law or its application of the law to the facts. *Goerg v. Parungao*, 930 F.2d 1563, 1566 (11th Cir.1991).

## III. REVIEW OF BANKRUPTCY COURT DECISION

### A. Discharge of Student Loans

A debtor cannot discharge government-backed student loans in a bankruptcy proceeding "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C.A. § 523(a)(8) (West 1993 & Supp.2004). The phrase "undue hardship" is not defined by the Bankruptcy Code. However, the Eleventh Circuit Court of Appeals has formally adopted the test set forth in *Brunner v. New York Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987) establishing the factors used to determine the presence of an "undue hardship." *See Hemar Ins. Corp. of Am. v. Cox, (In re Cox)*, 338 F.3d 1238, 1241 (11th Cir.2003).

To satisfy the *Brunner* test, a debtor must make a three-part showing: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *In re Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396).

The Bankruptcy Court here applied the *Brunner* test to the facts before it and noted the Eleventh Circuit's recognition in *In Re Cox* that Congress intended to make the discharge of student loans harder to obtain by amending section 523 of the Bankruptcy Code in 1998. The 1998 amendment "remov[ed] the only alternative method of discharging student loans and [left] 'undue hardship' as the sole avenue for relief." *In re Cox*, 338 F.3d at 1241–42. The Bankruptcy Court also acknowledged the Eleventh Circuit's characterization of the *Brunner* test as:

> leav[ing] an avenue of relief and [as] an effective tool for identifying those debtors whose earning potential and circumstances make it unlikely that they will produce the means necessary to repay the student loans while maintaining a minimal standard of living. This situation, in essence, is what constitutes an "undue hardship"—not the mere inability to pay, but an inability to pay that is likely to continue for a significant time.

*In re Cox*, 338 F.3d at 1242.

However, the Bankruptcy Court then began to rely substantially on a recent Tenth Circuit decision, *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302 (10th Cir.2004), in concluding that the Appellees satisfied the requirements for undue hardship and that, as a result, their student loans held by Appellant should be discharged. The Court finds that this reliance on *Polleys* is misplaced. While it may be true that *In re Cox* does not provide a step-by-step roadmap for applying each prong of the *Brunner* test, it does set forth clear principles regarding both its application and the purposes it is intended to serve. In *Polleys* the Tenth Circuit

adopted the *Brunner* framework, but in applying its standards, the court deviates significantly from the principles set forth by the Eleventh Circuit in *In re Cox*.

For example, the court in *Polleys* noted that in applying the *Brunner* test, many courts have come to deny the discharge of student loans, "under even the most dire circumstances." *Polleys*, 356 F.3d at 1308. The court went on to announce that the *Brunner* test should be applied in a manner that will promote the Bankruptcy Code's "fresh start" principle.[1] *Id.* This approach stands in stark contrast to the position taken by the Eleventh Circuit, which observed that "there is no evidence of an intent [by Congress] to permit judicially created exceptions to [the undue hardship requirement of] § 523(a)(8) via the 'fresh start' principle." *In re Cox*, 338 F.3d at 1243.

The court in *Polleys* cites *In re Roberson*, 999 F.2d 1132 (7th Cir.1993) as an example of a situation in which an "overly restrictive interpretation of the *Brunner* test fail[ed] to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor." *Polleys*, 356 F.3d at 1308. Importantly, however, in *In re Cox* the Eleventh Circuit cites *In re Roberson* as support for its disagreement with the contention that the *Brunner* test yields "harsh, and sometimes absurd, results." 338 F.3d at 1242. It quotes the court in *In re Roberson* as stating:

> [t]he government is not twisting the arms of potential students. The decision of whether or not to borrow for a college education lies with the individual; absent an expression to the contrary, the government does not guarantee the

---

1. The "fresh start" principle was first enunciated by the United States Supreme Court in 1918, when it held that the purpose of the federal bankruptcy system was "to aid the

unfortunate debtor by giving him a fresh start in life." *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918).

student's future financial success. If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow.

*In re Cox,* 338 F.3d at 1242 (quoting *In re Roberson,* 999 F.2d at 1137).

It is not clear why the Bankruptcy Court chose to rely so heavily on the policy rationale underlying the *Polleys* decision, particularly when Eleventh Circuit precedent, by which this Court is bound, takes a different stand on student loan dischargeability. The Court will now apply the *Brunner* test, as adopted by the Eleventh Circuit in *In re Cox,* to the facts established by the Bankruptcy Court in the present case.

## IV. APPLICATION OF THE *BRUNNER* TEST

### A. Minimal Standard of Living

█ Under the first prong of the *Brunner* test, the debtor must show that if he is "required to make the monthly student loan payment, his standard of living will 'fall below the minimum level.'" *Brunner v. New York Higher Educ. Servs. Corp.,* 46 B.R. 752, 754 (S.D.N.Y.1985) (district court opinion establishing the *Brunner* test). As part of its findings of fact, the Bankruptcy Court found that the Appellees' reasonable monthly expenses total $2,175 while their monthly earnings total only $2,038—a shortfall of $137 each month. Because the court found that the Appellees experience a shortage of funds without even making any student loan payments, it determined that the Boykins would be unable to maintain a minimal standard of living if required to repay the student loans. Appellant argues that this determination was made in error. This Court agrees.

### 1. Monthly Expenses

The Bankruptcy Court found that the Appellees have $2,175 in monthly expenses. Appellant states that in its review of the transcript, it only finds $1,870 in expenses listed. Further, Appellant points out that if the Appellees only have $1,870 in expenses, then they have over $400 in additional monthly income that could be used to repay the student loans. This amount is in addition to the annual tax refunds that the Appellees have received. The Court understands Appellant's argument. However, the Bankruptcy Court's finding is not clearly erroneous, as the Appellees' specific financial situation is subject to differing estimates. This Court is not empowered to make independent factual findings. *See In re Sublett,* 895 F.2d at 1384.

### 2. Loan Repayment Amount

Regardless of the possible discrepancy in monthly expenses, the Court is satisfied that Appellees do not meet the first prong of the *Brunner* test for the following reason. Appellees enrolled in the William D. Ford Federal Direct Loan Program to repay the outstanding loans owed to those creditors with which they entered into a settlement agreement. On page three (3) of the Bankruptcy Court's Memorandum Opinion (Tab # 37, Ex. 2, brown folder), footnote one states that:

[t]he Ford program offers four repayment options, including the income contingent repayment plan, under which the debtor's payments will never exceed 20 percent of his disposable income. For purposes of the Ford program, disposable income is the amount of the debtor's income that exceeds the poverty level. If the debtor's income is below the poverty level, his payments are $0. The amount of the payments is reevaluated

each year. Any balance remaining after 25 years is forgiven.

Under this plan, based on their current income level, Appellees will pay $59.67 a month in student loan repayment to the Ford program. If their income level decreases, the payment amount decreases. If their income level increases, the payment amount increases; however, payments will not rise above a predetermined level because of the alternative payment plans offered in the Ford program, as explained in Appellant's brief. (Tab # 3, at 6–9). The amount of the loan balance does not affect the payment amount under Appellees' current plan, the Income Contingent Repayment Plan ("ICRP").

On page ten (10) of the Bankruptcy Court's Memorandum Opinion (Tab # 37, Ex. 2, brown folder), the court states that "when entering the Ford program, [Debtors] would be compelled to proceed under the ICRP, which computes the monthly payment based on income rather than loan balance. *So, the addition of ECMC's loans would not affect the amount due.*" (emphasis added). The Bankruptcy Court made a clear finding of fact that including Appellant's loans in the repayment plan will not change the amount due monthly, and yet, the Bankruptcy Court did not find this to be persuasive in its analysis. This Court, on the contrary, finds this fact to be extremely compelling.

Even assuming Appellees are experiencing a shortage of income as compared to their expenses, they are already obligated to pay a certain amount as part of the settlement agreements entered into with their other creditors. This amount is tailored specifically to their ability to pay, calculated with regard to both their income and the national poverty level. The only variable that would affect the size of the loan payments is the amount of income Appellees are able to earn. With in-

creased ability to pay, comes increased responsibility to pay. Appellees' obligation to repay Appellant's loans will not change the amount of their monthly payment. Based on the ICRP, in which Appellees are already enrolled under the Ford program, their ability to maintain a minimal standard of living would not be affected by the inclusion of Appellant's loans.

### B. Additional Circumstances

■ The second prong of the *Brunner* test requires the debtor to show additional circumstances that will prevent him from maintaining a minimal standard of living for a significant portion of the repayment period if obligated to repay his student loans. *See In re Cox,* 338 F.3d at 1241. Applying this prong "does not necessarily require future income predictions." *Ulm v. Educ. Credit Mgmt. Corp.,* 304 B.R. 915, 921 (S.D.Ga.2004). Instead, it focuses on "the present existence of circumstances— circumstances *in addition* to a present lack of ability to pay—that strongly suggest an inability to pay the loan over an extended period of time." *Id.*

The Bankruptcy Court discussed the fact that neither of the Appellees earned a college degree, that neither has marketable skills above the minimum wage level, that they have two young children, that Mrs. Boykin has back problems, and that Mr. Boykin has disgraphia. Due to these circumstances, the court found that it was unlikely that the Appellees would ever realize an increase in earning potential sufficient to enable repayment of their loans.

This Court does not see in this case "the presence of 'unique' or 'extraordinary' circumstances which would render it unlikely that the debtor ever would be able to honor his obligations." *Ulm,* 304 B.R. at 921 (quoting *Ballard v. Virginia (In re Ballard),* 60 B.R. 673, 675 (Bankr.W.D.Va.

1986)). While the Court does not necessarily agree with the Bankruptcy Court's analysis of these factors for the purposes of applying the second prong of *Brunner*, because Appellees have failed to meet the first and third prongs, that disagreement is immaterial to the present decision.

### C. Good Faith Efforts

Under the third prong, a debtor bears the burden of demonstrating that he has taken good faith efforts to repay student loans. *See In re Cox*, 338 F.3d at 1241. The debtor must show that he is "making efforts to satisfy the debt by all means—or at least *some* means—within the debtor's reasonable control." *Ulm*, 304 B.R. at 922. The Bankruptcy Court found that the Appellees acted in good faith in their efforts to repay the student loans based on the following findings of fact.

The Bankruptcy Court noted that the Appellees are making a good faith effort to maintain employment and a steady stream of income, while living rather frugally. It also found that they have maintained contact with their lenders, applying for and receiving forebearances, which are now exhausted. Furthermore, it should be pointed out that the Appellees have negotiated settlement agreements with two other lenders, indicating an effort to cooperate in repaying the student loans.

While these actions are certainly laudable, there remains a crucial fact that cannot be ignored by the Court and which tends to undercut the arguments in support of a good faith finding. The Bankruptcy Court clearly acknowledged that including the student loans held by Appellant ECMC in the Appellees' Ford repayment plan will not affect the amount of their monthly payments, as these payments would be made under the Income Contingent Repayment Plan. Because the Appellees will not see an increase in their monthly repayment obligation,[2] even with the inclusion of Appellant's loans, it is difficult to conclude that they have fully explored, in good faith, all means of repayment that are reasonably within their control. As many courts across the country have noted, failure to diligently pursue repayment options is a factor properly to be considered in applying *Brunner's* good faith requirement. *See Douglass v. Great Lakes Higher Educ. Servicing Corp.*, 237 B.R. 652, 657 (Bankr.N.D.Ohio 1999); *see also United States Dep't of Educ. v. Wallace*, 259 B.R. 170, 184 (C.D.Cal.2000); *Thoms v. Educ. Credit Mgmt. Corp.*, 257 B.R. 144, 150 (Bankr. S.D.N.Y.2001). This Court agrees with the approach taken and the reasoning employed by those courts and holds that the Bankruptcy Court erred in not giving adequate consideration to Appellees' failure to take full advantage of the ICRP.

While the Court is sympathetic to the unfortunate nature of these circumstances, Appellees are ultimately responsible for the consequences of their decision to borrow money in pursuit of their educational goals and cannot discharge these loans when repaying them is a viable option. This Court finds that Appellees have not satisfied *Brunner's* good faith requirement.

### V. CONCLUSION

"A finding of undue hardship is reserved for the exceptional case." *Ulm*, 304 B.R. at 921 (quoting *In re Ballard*, 60 B.R. at 675). Using the *Brunner* test as a guide, the Court does not find that the facts and circumstances of this case would cause Ap-

---

**2.** If any increase results, it will be due to an increase in the Appellees' income, not the inclusion of the outstanding debt owed to Appellant.

pellees to suffer an "undue hardship" in repaying the loans held by Appellant. Thus, discharge of these loans is improper under 11 U.S.C.A. § 523(a)(8). Aside from any issues specifically discussed in this Order, this Court does not deem any of the facts found by the bankruptcy court to be clearly erroneous and therefore does not disturb the findings of fact. This Court, however, does disagree with the bankruptcy court's application of the relevant law.

Accordingly, the Court hereby **ORDERS** that the decision of the Bankruptcy Court is **REVERSED** and the Appellees' debt to Appellant is reinstated.