**LYKES BROS., INC., a Florida corporation, Plaintiff–Appellee,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, Defendant–Appellant.**

**No. 93–3179.**

United States Court of Appeals, Eleventh Circuit.

Sept. 20, 1995.

---

632

Douglas Molloy, Asst. U.S. Atty., Ft.
Myers, FL, Vicki L. Plaut, David C. Shilton,

Dept. of Justice, Env. & Natural Resources Div., Washington, DC, for appellants.

Charles W. Pittman, Ted R. Manry, III, Susan W. Fox, Harold D. Oehler, L.M. Buddy Blain, Tampa, FL, for appellee.

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and CARNES *, District Judge.

COX, Circuit Judge:

## INTRODUCTION

Lykes Bros., Inc. ("Lykes") brought this civil action pursuant to 5 U.S.C. § 704 against the U.S. Army Corps of Engineers ("Corps") seeking to review and set aside the Corps' determination that Fisheating Creek in Glades County, Florida, is a navigable water of the United States from its mouth at the western shore of Lake Okeechobee to the bridge at State Road 731 near Venus, Florida, some 30 miles upstream. Lykes also sought a declaratory judgment determining that the creek is not a navigable water of the United States. After a seventeen-day trial, the district court reversed the Corps' determination, concluding that Fisheating Creek is navigable only for several miles, from its mouth at Lake Okeechobee to Fort Center, Florida. *Lykes Bros., Inc. v. U.S. Army Corps of Engrs.*, 821 F.Supp. 1457 (M.D.Fla. 1993). The Corps appeals, contending that the district court's findings of fact are clearly erroneous and that the district court misapplied the governing law. We affirm.

___

* Honorable Julie E. Carnes, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. Distances along Fisheating Creek are difficult to determine from the record because the creek does not follow a direct route, snaking back and forth before emptying into Lake Okeechobee. Therefore, the distances mentioned in this opinion are rough approximations discerned from the maps and testimony in the record.

## I. BACKGROUND

Fisheating Creek is a nontidal freshwater waterway in southcentral Florida. The creek begins just south of Hog Island Hammock in Highlands County, and runs south and east about 30 to 40 miles through Glades County.[1] The creek flows through Cowbone Marsh and then through Fort Center before entering Lake Okeechobee near the community of Lakeport. A significant portion of Fisheating Creek flows through lands owned by Lykes. According to the Corps, the public had full access to Fisheating Creek until 1988. Then, Lykes felled approximately 80 trees at various portions of the creek to block public access, posted "no trespassing" signs, and erected barbed wire fences and gates across the creek in several places.

The State of Florida sued Lykes in federal district court to compel removal of the trees and fences under the Rivers and Harbors Act, 33 U.S.C. § 403, which generally prohibits the obstruction of navigable waters.[2] The district court dismissed the action, holding that the State must first pursue administrative remedies, such as a determination of navigability by the Corps and subsequent administrative enforcement of § 403.

The State then sued the Corps in federal district court to compel the Corps to make a navigability determination. In response, the Corps prepared a report of findings in which it concluded that Fisheating Creek is a navigable water of the United States between Lake Okeechobee and the bridge over State Road 731 near Venus, Florida. The Corps' action led the State to dismiss its suit. After the Corps' finding of navigability, Lykes took down its fences, removed the trees, and filed a permit application with the Corps under 33 U.S.C. § 403 to maintain fencing and opera-

___

2. Section 403 prohibits the obstruction of the navigable capacity of any waters of the United States, unless affirmatively authorized by Congress. 33 U.S.C. § 403 (1988). Congress has delegated its authority to authorize certain structures which obstruct navigable waters. *Wisconsin v. Illinois*, 278 U.S. 367, 411–13, 49 S.Ct. 163, 169–70, 73 L.Ed. 426 (1929). Thus, such structures are permitted only upon the recommendation of the Chief of Engineers of the Corps and authorization by the Secretary of the Army. 33 U.S.C. § 403 (1988).

ble gates at two crossings along the creek. Lykes then sued the Corps in federal district court, seeking review of the Corps' navigability determination. The Corps has suspended action on the permit application until after resolution of this litigation.

Lykes moved for a trial de novo in district court.[3] The court granted the motion, held a seventeen-day trial, and concluded that Fisheating Creek is navigable only to Fort Center, a few miles upstream from its mouth. The Corps appeals the district court's judgment, asserting that the court's factual determinations are clearly erroneous, and that the court misapplied the applicable law.

## II. ISSUES ON APPEAL

The Corps raises two issues on appeal. The first issue is whether the district court's factual findings are clearly erroneous. The second issue is whether the district court applied the appropriate legal standard to its determination of navigability.

## III. STANDARDS OF REVIEW

■ This court reviews a district court's factual findings for clear error, and reviews the application of law to those facts de novo. *United States v. Harrell,* 926 F.2d 1036, 1039 (11th Cir.1991). For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).[4]

## IV. DISCUSSION

### A. *Relevant Considerations*

■ A waterway is regarded as "navigable water of the United States" within the meaning of § 10 of the Rivers and Harbors

Act, 33 U.S.C. § 403, if it is used, or is susceptible of being used, in its ordinary condition, as a highway for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. *United States v. Harrell,* 926 F.2d 1036, 1038–39 (11th Cir.1991); *Hardy Salt Co. v. Southern Pac. Transp. Co.,* 501 F.2d 1156, 1167 (10th Cir.) (citing *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871)), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). Thus, the waterway must form, either by itself "or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871).

■ Once a waterway is found to be navigable, it remains so. Therefore, if a waterway at one time was navigable in its natural or improved state, or was susceptible to navigation by way of reasonable improvement, it retains its navigable status even though it is not presently used for commerce, or is presently incapable of use because of changed conditions or the presence of obstructions. *Harrell,* 926 F.2d at 1039 & n. 7 (citing *United States v. Appalachian Elec. Power Co.,* 311 U.S. 377, 408, 61 S.Ct. 291, 299, 85 L.Ed. 243 (1940); 33 C.F.R. § 329).

■ Fisheating Creek empties into Lake Okeechobee. Until the late 1880s, no navigable water passage existed between Lake Okeechobee and either the Atlantic Ocean or the Gulf of Mexico. Fisheating Creek's only link to interstate commerce lies through Lake Okeechobee. Thus, it could not be navigable as a matter of law before the late 1880s, whether or not internally navigable, because no water route linked the creek with other states or countries.

**3.** The Corps does not challenge the procedure the district court used to review the Corps' determination. Thus, this appeal presents no issue relative to what deference should be given the Corps' determination and no issue relative to the court's de novo determination of navigability.

**4.** The district court adopted verbatim many of Lykes's proposed findings. The clear error standard does not change when the district court

adopts verbatim the findings of one of the parties, but the practice is strongly disapproved. *Anderson v. Bessemer City,* 470 U.S. 564, 570–72, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985); *Cabriolet Porsche Audi, Inc. v. American Honda Motor Co.,* 773 F.2d 1193, 1198 n. 2 (11th Cir. 1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986).

The parties agree that Cowbone Marsh has been occluded from at least 1940. Lykes contends that Cowbone Marsh has always presented a barrier to travel on Fisheating Creek. The Corps, on the other hand, argues that a channel existed through Cowbone Marsh through 1929, disappearing sometime before 1940. Because it is uncontroverted that Cowbone Marsh has blocked travel on Fisheating Creek since at least 1940, and because the creek had no water link to interstate commerce until the late 1880s, the critical period in this case is between the late 1880s and 1940. In reviewing the district court's factual findings and its application of law to those findings, we are concerned with whether Fisheating Creek was susceptible to commerce during that period.

### B. The District Court's Factual Findings

#### 1. Cowbone Marsh

■ The centerpiece of this litigation has been Cowbone Marsh, which is located some six miles, as the crow flies, from the mouth of the creek at Lakeport. The district court found that Cowbone Marsh "has been a nonnavigable marsh for hundreds of years, without any defined or navigable channel." *Lykes Bros., Inc.,* 821 F.Supp. at 1461 (Finding 31). The Corps contends that the district court clearly erred in finding that Cowbone Marsh had always been a barrier to navigation in Fisheating Creek. The Corps argues that certain evidence clearly shows that Cowbone Marsh was once navigable.

The Corps points first to a map prepared by George Preble, who led a military exploratory expedition up Fisheating Creek in 1842. The Corps contends that Preble's map indicates that a channel existed through Cowbone Marsh because Preble drew a solid line indicating a channel through what appears on the map to be Cowbone Marsh. Therefore, the Corps contends that Preble's map supports a finding of navigability.

■ However, as the district court noted, Preble's account of his journey up Fisheating Creek does not necessarily support a finding of navigability. Preble proceeded upstream from Fort Center, through Cowbone Marsh, to what is now referred to as the Sand Lake area. Preble reported that on his way up the creek, when the party reached what was probably Cowbone Marsh, they proceeded with great difficulty, pushing the canoes through the weeds, and hauling the canoes over two troublesome places. On the return trip through what was probably Cowbone Marsh, the Preble party had little difficulty with the haulovers; however, after the two haulovers, they had to search for a significant length of time to find the creek.

■ The district court found that this account supported a finding that Cowbone Marsh was not navigable in 1842. Although we recognize that navigability is not destroyed by occasional obstructions or portages, *Economy Light & Power Co. v. United States,* 256 U.S. 113, 122, 41 S.Ct. 409, 412, 65 L.Ed. 847 (1921), the district court did not clearly err in concluding that Preble's account shows that travel through Cowbone Marsh was very difficult in 1842. Moreover, we note that Preble's expedition took place in 1842, over 40 years before Lake Okeechobee was linked with the Atlantic or the Gulf. Thus, the probative value of Preble's account is not as high as the Corps asserts.

■ The Corps also contends that an 1871 public land survey performed by a disinterested surveyor, J.C. Tannehill, shows that there was a well-defined channel through Cowbone Marsh because, in mapping the area, Tannehill drew a solid line through his depiction of Cowbone Marsh. However, the line Tannehill drew is accompanied by "meander" readings on one side. Surveyors were required to meander both sides of what they concluded were navigable rivers, and to meander one bank of what the surveyor thought were well-defined natural arteries of "internal communication." Because Tannehill only meandered one bank of Fisheating Creek, the district court found that Tannehill had determined Fisheating Creek to be nonnavigable. Given the instructions under which Tannehill operated, his meandering of only one bank of Fisheating Creek is probative of whether Fisheating

636

Creek was navigable in 1871.[5]

The Corps also argues that the way Tannehill measured the width of Fisheating Creek in Cowbone Marsh indicates there was a channel. Tannehill measured the width of the creek by using triangulation, as opposed to pulling a chain across the creek. The Corps argues that this indicates that the stream was too deep or too swift to cross with a chain. The district court did not address this in its opinion, but the record indicates that there were other reasons a surveyor might have used triangulation, such as if the channel were very wide and filled with obstacles. As a marsh is often very wide and filled with obstacles such as dense vegetation, measuring width by triangulation does not necessarily show that the channel is well defined and deep.

The Corps also contends that several other maps indicate there was a channel through Cowbone Marsh. In particular, the Corps refers to a 1929 Corps of Engineers survey, a 1926 map of Glades County, an 1899 Atlas Map of Florida, and an 1856 military map. In each of these maps, Fisheating Creek is shown as either a stream or a river. The district court discounted the 1929 Corps of Engineers survey because it was designed for flood-control purposes. The court found that the "contour lines that purport to cross the thread of a channel show a negligible depression that does not indicate any defined channel or any levees." *Lykes Bros., Inc.,* 821 F.Supp. at 1461 (Finding 28). In light of all of the evidence, this conclusion is not clearly erroneous. Moreover, the other maps, although probative, must be considered in light of all of the evidence.

The Corps also contends that the testimony of its expert witness supports a conclusion that a navigable channel once existed through Cowbone Marsh. The district court found that the expert's testimony indicated that three feet of muck existed throughout Cowbone Marsh, and that this indicated that the marsh has been vegetated for hundreds of years. The court also found that the soil

borings in Cowbone Marsh fail to show the existence of a channel through Cowbone Marsh for hundreds of years. We have reviewed the testimony of this witness, and agree with the Corps that parts of his testimony support a conclusion that a navigable channel once existed through Cowbone Marsh. Other parts, however, support the district court's findings, and we do not conclude that the district court mischaracterized his testimony.

The district court also based its finding that Cowbone Marsh has been nonnavigable for hundreds of years on other evidence. Lykes presented a number of witnesses, some of whom were lifetime residents of the area, who testified that a navigable channel had never existed through Cowbone Marsh, and that Fisheating Creek had not been navigable or used for commerce upstream from Fort Center. Two of these witnesses were born as early as 1919, and they recalled the conditions of Fisheating Creek and Cowbone Marsh from the early to mid 1920s. The court also considered a 1915 Corps investigation that described Cowbone Marsh as "impassable even in a small skiff boat." *Lykes Bros., Inc.,* 821 F.Supp. at 1459 (Finding 12). The 1915 investigation also noted that no commerce was carried on the creek, and that it was unlikely that creek improvements would catalyze commerce. In addition, the court considered aerial photographs from 1940 through 1990, which show that Cowbone Marsh has remained virtually unchanged and nonnavigable throughout the period. Although we are primarily interested in the period between the late 1880s and 1940, the early 1940s photographs are probative because they show no sign of a recently filled channel, indicating that no channel existed for some time before 1940.

For a reviewing court to conclude that a district court clearly erred in its findings of fact, the reviewing court, after examining the entire record, must be left with "the definite and firm conviction that a mistake has been committed." *United States Gypsum Co.,* 333

5. Although we recognize that surveyors do not settle questions of navigability, the surveyor's actions are probative. *See Denson v. Stack,* 997 F.2d 1356, 1364–65 (11th Cir.1993) (Clark, Sen-

ior Circuit Judge, dissenting) (noting the probative value of meander lines in determining navigability).

U.S. at 395, 68 S.Ct. at 542. After reviewing all of the evidence regarding Cowbone Marsh, we find that there is significant evidence to support a finding of nonnavigability between the late 1880s and 1940, as well as before and after that period. We hold that the district court did not clearly err in its findings relative to Cowbone Marsh.

### 2. Other Factual Considerations Regarding the Navigability of Fisheating Creek [6]

■ The Corps challenges several other of the district court's factual findings, contending that the factual findings are clearly erroneous; even if the findings are correct, the Corps argues, consideration of the findings was clear error. First, the Corps contends that the district court found that the failure to include Fisheating Creek in the Coast Guard's publication, *Bridges Over Navigable Waters,* indicates that the creek is not navigable, and that this was error because the publication is not meant to set forth a list of navigable waters, but is designed to provide a list of bridges, both permitted and unpermitted, in order to assist mariners.

■ Permits are required for the construction of bridges over navigable waters. The district court found that the actions of the Corps and the United States Coast Guard in not requiring permits for bridges over Fisheating Creek because the creek was found to be nonnavigable was relevant in determining the navigability of Fisheating Creek. In a memorandum admitted into evidence, the Coast Guard found that Fisheating Creek "[has] no physical characteristics indicative of present or past use for substantial commercial navigation[,] ... [has] no reasonable susceptibility for future substantial commercial use[,] ... [and has] not been determined Congressionally or by controlling case law to be a navigable waterway of the United States." (Plaintiff Ex. 1184.) The Corps contention that Finding 14 is clearly

erroneous because *Bridges Over Navigable Waters* does not set forth a list of navigable waters is completely without merit. First, the district court, in Finding 14, did not refer to *Bridges Over Navigable Waters,* (Plaintiff Ex. 1162,) but rather to a memorandum by the Coast Guard regarding Coast Guard jurisdiction over Fisheating Creek. (Plaintiff Ex. 1184.) Second, the opinion of the Coast Guard is relevant, although not dispositive, on the issue of navigability. The district court did not err in considering this evidence.

■ Second, the Corps challenges the district court's factual findings dealing with the manner in which the State of Florida has treated Fisheating Creek. In determining the navigability of Fisheating Creek, the district court gave weight to Florida's treatment of the creek. The court stated:

All of the land in the [Fisheating Creek] corridor in Glades County has been deeded to private interests and there are no reservations in any of those deeds for land within [Fisheating Creek].... From 1959 to 1985, the State of Florida leased lands from Lykes [encompassing the creek] corridor. Fences were placed around the perimeters of these areas and across the creek in several locations. Access by the public was either limited or prohibited.... The information collected by agencies of the State of Florida, Division of State Lands and Department of Natural Resources, did not indicate navigability of [Fisheating Creek] except from Fort Center to [Lake Okeechobee].

*Lykes Bros., Inc.,* 821 F.Supp. at 1460 (Findings 15–17). The Corps contends that the State has always taken the position that the creek is a public waterway for which there must be free public access. Moreover, the Corps contends that the reservation of public rights in deeds surrounding Fisheating Creek is irrelevant because, under Florida law, the failure to reserve such public rights does not divest the state of title to navigable

6. The Corps also challenges the district court's findings regarding the navigability of the creek upstream from Cowbone Marsh. The district court characterized Fisheating Creek above Cowbone Marsh as a "series of small pothole lakes, shoal areas, sandbars, narrow creek bed and

marshes." *Lykes Bros., Inc.,* 821 F.Supp. at 1460 (Finding 19). Since we find that the court did not clearly err in finding Cowbone Marsh to be nonnavigable, the conditions above Cowbone Marsh are not determinative.

waters. *See Coastal Petroleum Co. v. American Cyanamid Co.*, 492 So.2d 339, 343 (Fla. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987). The Corps also contends that the operation of a wildlife management area typically involves restriction and supervision of access to the area, and therefore the district court's consideration of these findings was erroneous.

We find the Corps' contentions to be without merit. Although under Florida law the failure to reserve public rights does not divest the State of title, Florida's failure to reserve those rights is still probative of whether the State considered Fisheating Creek to be navigable at the time the property was conveyed. Moreover, Florida's other actions, such as leasing Fisheating Creek from Lykes and limiting access to Fisheating Creek, are also probative because it logically follows that the State may not have considered Fisheating Creek to be navigable and under sovereign ownership. Thus, the district court did not err in considering this evidence.

Third, the Corps challenges the district court's consideration of an investigation and report by John Adams, Chief of the Corps' Regulatory Division, which concluded that Fisheating Creek was not a navigable waterway of the United States. The Corps argues that consideration of this report was error because the District Engineer, the decisionmaker on navigability, conducted a more thorough investigation and concluded that Fisheating Creek is navigable. Although the initial report of John Adams was not adopted by the District Engineer, its admissibility is not challenged on this appeal. It is relevant, and the district court did not err in considering the report.

### 3. Summary of our Review of the District Court's Factual Findings

In summary, we hold that the district court did not clearly err in its findings of fact. The Corps correctly argues that there is evidence in the record that would support a finding that there was, during the relevant period, a defined and navigable channel through Cowbone Marsh, and that the creek was navigable during the relevant period from Lake Okeechobee to State Road 731 near Venus, Florida. But there is substantial evidence to support a contrary finding, and the resolution of such factual disputes is the province of the trial court.

### C. Application of Law to the District Court's Factual Findings

The Corps challenges the district court's legal conclusions, but its challenge assumes that the court's factual findings are erroneous. The Corps asserts that "[i]f the district court was wrong about these facts, particularly about the absence of a channel through Cowbone Marsh, its conclusion that the Creek is not navigable above Fort Center cannot stand." (Appellant's Brief at 38, 39.) Our determination that the trial court's factual findings are not clearly erroneous undermines the Corps' challenge to the court's legal conclusions.

### V. CONCLUSION

We hold that the district court did not clearly err in its findings of fact, and we find no error in its determination that Fisheating Creek upstream from Fort Center is not a navigable water body of the United States subject to federal jurisdiction under 33 U.S.C. § 403. Therefore, we affirm the judgment of the district court.

AFFIRMED.