[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13471

Non-Argument Calendar

_____

RODNEY THOMAS,

Plaintiff-Appellant,

*versus*

SHERIFF RIC L. BRADSHAW,
Palm Beach County Sheriff's Office, in his official capacity,
SERGEANT MCINNIS,
DOCTOR JEAN,
Correctional Health Service, in their official capacity,
KRISTA SHUFFELL,
RN, Correctional Health Services, in her official capacity,
DENA PAQUETH,
Food Service Director, in her official capacity, et al.,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-80079-JIC

———————————

Before WILSON, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Rodney Thomas appeals the district court's grant of summary judgment in favor of jail officials on his claim alleging that the officials were deliberately indifferent to his dietary needs, in violation of the Fourteenth Amendment. Thomas also challenges the district court's earlier dismissal of a separate deliberate indifference claim based on his need for prescription medication. After careful review, we reverse the district court's dismissal decision and affirm its grant of summary judgment.

## I.

Thomas was a pre-trial detainee at the Palm Beach County Jail in West Palm Beach, Florida from March 2017 to June 2019. While he was being held there, he filed a *pro se* complaint alleging that seven jail officials were "deliberate[ly] indifferen[t]" to medical and dietary needs caused by his chronic kidney condition. He

initially named the Palm Beach County Sheriff, three sergeants, a doctor, a nurse, and the "director of food service" as defendants. Several months later, the district court ordered Thomas to amend his complaint to avoid dismissal, and he filed a document with more detailed allegations. The amended complaint also added a second nurse defendant.

Thomas's complaint boiled down to two allegations: jail officials violated his constitutional rights "[b]y delaying necessary medication" and not providing him an adequate diet. He claimed that he informed jail officials that he had been diagnosed with "end stage kidney disease" when he arrived at the jail, but that he was inconsistently provided necessary medication to treat his condition. He also alleged that on two occasions in May 2017, he was admitted to the hospital for emergency blood transfusions. He blamed the nurses for failing to provide his medication. Specifically, he alleged that the nurses waited until the jail ran out of medication to order more "instead of adequately maintain a stock supply," meaning he was not provided medication "as scheduled." He contended that the nurses "knew or recklessly disregard[ed]" the risk of harm caused by this practice.

On the dietary claim, Thomas alleged that officials prescribed a renal diet that "d[id] not exist" and, in any event, was "nutritionally inadequate" for his condition. He laid the blame for the dietary violations on two sergeants—Mark Putnam and Michael McInnis—and Dena Paquette (erroneously identified as Dena Paqueth), who served as the food service coordinator.

Thomas attached to his complaint a number of grievances that corroborated his allegations. Beginning in July 2017, and continuing through the filing of the amended complaint, he filed various grievances alleging that he was denied prescribed medication. However, the bulk of the grievances concerned his dietary claim. Time and again, he grieved that he received a renal diet that was nutritionally inadequate because he was either provided food he should not eat or not provided food he should eat. He was on the diet from September 30, 2017, to January 29, 2018, when he requested to be taken off the diet against the advice of the jail's medical staff.

The jail's policies require an inmate wishing to file a grievance to request a form from the deputy assigned to his unit. The form is two pages—the first page asks for information related to the initial complaint and contains space for a response, and the second page provides space for arguments in support of appeals. The form must be submitted within seven days of the incident forming the basis of the complaint, "unless it was not feasible within that time period." Within fifteen days, the jail will respond to the grievance; however, a grievance "will not be processed" if the form is improperly completed or the complaint is deemed frivolous, "excessive or repetitive in nature," or "previously answered." Once an inmate receives "a response," he may "appeal to a division commander" within five days. A commander's response is appealable to "the major," and "[t]he major's decision is final."

Most of Thomas's grievances were denied, and he rarely appealed. In July 2017, Thomas requested the rules governing the jail's "grievance procedure." An official responded that he should make a "legal request" to the law library for the procedures. Despite filing numerous grievances thereafter, Thomas did not request the procedures until November 2017, and he received a copy a few weeks later.

That same month, Thomas attempted to appeal six grievances at once. He "request[ed] excusable neglect . . . be applied" to excuse the five-day appeal deadline, claimed that the responses he received failed to "inform [him] that [he] could seek further appeal," and stated that jail officials had taken his copies of the prior grievances. The jail's grievance coordinator, Sergeant Iliopoulos, responded that Thomas had not followed "the proper protocol to appeal." Iliopoulos suggested that he appeal each grievance "in the space provided" on the form, but also informed him that each of the grievances was outside of the five-day deadline. In any event, Iliopoulos had "spoken with medical and the kitchen" and learned that potatoes, the food Thomas most often complained about receiving, "were not restricted from [his] diet." As a result, Iliopoulos warned Thomas that any future grievance related to "this matter w[ould] be returned unprocessed." Thomas continued filing grievances related to his diet until it was discontinued.

After Thomas recast his complaint, a magistrate judge screened it pursuant to 28 U.S.C. §§ 1915 and 1915A. The magistrate judge recommended dismissing Thomas's claims because he

alleged, "[a]t best, . . . that on two occasions [the nurses] did not provide him medication because they 'ran out.'" This allegation, as the magistrate judge characterized it, failed to give rise to a claim for deliberate indifference. The magistrate judge recommended dismissing the remainder of Thomas's allegations, as well.

Thomas objected to the dismissal recommendation, noting that "[t]he crux of [his] claims is failure to provide necessary medication *and* nutritionally adequate diet for his serious medical need." He repeated the allegation against the nurses—that they failed to provide his medication "as prescribed" from March 2017 through December 2018. In fact, he attached two recent medical grievances that were deemed "valid" by jail officials and upheld on appeal. And he continued to argue that the diet provided was inadequate to address his medical needs.

The district court dismissed Thomas's medication claim but permitted the dietary claim to proceed. The district court agreed with the magistrate judge that failing to provide an inmate with medication on "two occasions" does not support a deliberate indifference claim, and thereby adopted the report and recommendation to that extent. But the district court concluded that the magistrate judge gave Thomas's dietary claim short shrift. Thomas's complaint adequately alleged that "McInnis, Putnam, and Paquet[te] knew of his serious illness . . . but refused to provide him with a medically appropriate diet for that illness." Thus, the district court refused to adopt that part of the recommendation, and only Thomas's dietary claim against McInnis, Putnam, and Paquette

was permitted to proceed. Thomas attempted to appeal the dismissal order, but this Court dismissed his appeal for lack of jurisdiction. *Thomas v. Bradshaw, et al.*, No. 19-11007, (11th Cir. May 30, 2019).

Eventually, the defendants moved for summary judgment. The district court granted summary judgment to Paquette based on Thomas's failure to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a). It was undisputed that Thomas "failed to appeal a single grievance" related to his dietary claim, and he provided no basis for excusing his neglect. As for McInnis and Putnam, who did not move for summary judgment on exhaustion grounds, the district court concluded that Thomas's claims against them failed on the merits. Thomas appealed to this Court, and we appointed counsel to represent him.

## II.

We review a district court's dismissal of a complaint for failure to state a claim under Section 1915A *de novo*, taking the allegations in the complaint as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

We review a district court's grant of summary judgment *de novo*, drawing all justifiable factual inferences in Thomas's favor. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010). But where a district court applies Section 1997e(a)'s exhaustion requirement, we review the factual findings relating to the exhaustion requirement for clear error. *Varner v. Shepard*, 11 F.4th 1252, 1257 (11th Cir. 2021); *see Bryant v. Rich*, 530 F.3d 1368, 1377 (11th

Cir. 2008). "For a factual finding to be clearly erroneous," our review of the record must leave us "with the definite and firm conviction that a mistake has been committed." *Lykes Bros. v. U.S. Army Corps of Engineers*, 64 F.3d 630, 634 (11th Cir. 1995) (quotation omitted).

## III.

Thomas makes three arguments on appeal. First, he contends that the district court based its dismissal order on a recharacterization of his complaint. Second, he argues that he was not required to exhaust his administrative remedies because the jail's grievance procedures were not available to him. And third, he contends that genuine issues of material fact should have precluded summary judgment. Considering each argument in turn, we agree with the first, disagree with the second, and see no reason to reach the third.

A.     *The district court based its dismissal order on an erroneous reading of Thomas's complaint.*

Thomas argues that the district court recharacterized and narrowed the allegations in his complaint related to the jail's provision of medication. He contends that, by limiting his allegations to two instances of emergency treatment, the district court disregarded "the pattern of reckless treatment actually alleged" in his complaint. Because the district court dismissed the medication theory at the screening stage, the named nurse defendants were never served. Thus, no party defends the district court's reasoning on

20-13471                Opinion of the Court                9

appeal. In any event, having reviewed the record, we agree with Thomas.

Section 1915A requires a district court to screen a prisoner complaint seeking redress from a government official. 28 U.S.C. § 1915A(a). If the district court concludes that the complaint "fails to state a claim upon which relief may be granted," it "shall . . . dismiss the complaint." *Id.* § 1915A(b); *see also id.* § 1915(e)(2)(B)(ii) (requiring a district court to "dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."). The standard applicable to a dismissal under Section 1915A is the same as the standard set out under Federal Rule of Civil Procedure 12(b)(6), meaning a court must dismiss the complaint only if, after taking the allegations contained therein as true, it fails to state a claim. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "Technically, the Fourteenth Amendment Due Process Clause, not the Eighth Amendment prohibition on cruel and unusual punishment, governs pretrial detainees" like Thomas, but the standards "are identical." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). "Grossly incompetent or inadequate medical care can violate the [E]ighth [A]mendment." *Rogers v. Evans*, 792 F.2d 1052, 1062 (11th Cir. 1986). As such, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C. §] 1983." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But

"[m]ere negligence or malpractice does not" give rise to a cause of action—instead, a prisoner must allege "[m]edical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Evans*, 792 F.2d at 1058 (citation omitted).

A deliberate indifference claim has objective and subjective components. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). The plaintiff must show: (1) that he has "an objectively serious medical need," *id.*; (2) that, subjectively, the defendants were deliberately indifferent to that need; and (3) that the defendants' indifference caused the plaintiff's injury, *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). The subjective component has three sub-components: "[t]o establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020).

Here, the district court improperly dismissed Thomas's medication claim. At the outset, we agree with Thomas that the district court misconstrued his complaint and narrowed the allegations contained therein. Although Thomas contended that the nurses inconsistently provided his medications from March 2017, through the date of the amended complaint, the district court erroneously concluded that he alleged only "that nurses . . . did not provide him his medication on two occasions . . . ." Giving liberal construction to Thomas's *pro se* complaint, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), we

believe his allegations were much broader—he alleged that the problem repeatedly occurred over multiple months, which led to two hospitalizations.

Further, we agree with Thomas that, at the motion to dismiss stage, he stated a deliberate indifference claim against the nurses for failing to provide his medication. He argued that the nurses were aware he had been diagnosed with "end-stage renal disease," which constitutes a serious medical need. *See Goebert*, 510 F.3d at 1326 (explaining that a serious medical need "is one that has been diagnosed by a physician as mandating treatment" (quotation omitted)). He contended that the nurses were aware that failing to provide him with medication presented a risk of harm. He argued that the nurses "recklessly disregarded" that risk by continually running out of medication even after he needed emergency treatment on two occasions. And viewing these allegations in Thomas's favor, the nurses acted with more than gross negligence. After all, Thomas alleged that his medication was inconsistently provided for months. He corroborated these allegations with grievances, several of which were deemed valid by jail officials. As we have explained, "a defendant who delays necessary treatment for non-medical reasons," as Thomas alleged here, "may exhibit deliberate indifference." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). Accordingly, these allegations were

sufficient to state a deliberate indifference claim, and we reverse the district court's dismissal order.

B.      *Thomas failed to properly exhaust the dietary needs claim.*

As to Thomas's dietary needs claim, Thomas argues that the district court incorrectly concluded that he failed to exhaust his administrative remedies for three reasons. First, he contends that "there was never any formal determination by any [jail] official" that his appeals were untimely. Second, he contends that the jail's grievance procedure was "a classic run-around" in that it presented no practical opportunity for his grievances to be addressed. And third, he argues that jail officials "thwarted and interfered" with his attempts to satisfy the grievance process. We disagree.

"Before a prisoner may bring a prison-conditions suit under [Section] 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1208 (11th Cir. 2015) (citing 42 U.S.C. § 1997e(a)). A prisoner is "not required to specially plead or demonstrate exhaustion"—instead, it is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). For a defendant to preserve the defense, "exhaustion . . . must be raised in a responsive pleading." *Bingham*, 654 F.3d at 1175; Fed. R. Civ. P. 8(c)(1); *see Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense.").

20-13471                Opinion of the Court                13

We have explained that a district court undertakes a two-step process when determining whether a prisoner has exhausted his administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). At the first step, the district court asks whether the factual allegations in the complaint, taken as true, indicate that the defendant is entitled to dismissal. *Id.* If not, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The defendants bear the burden of proving their exhaustion defense. *Id.*

To determine whether a prisoner has exhausted a claim, the district court must determine whether the prisoner has complied with his facility's grievance procedures. *Jones*, 549 U.S. at 218. The Supreme Court has recognized, however, that although a prisoner "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy may be unavailable when, as a practical matter, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief." *Id.* at 643. Or a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Here, based on an undisputed record, the district court found that Thomas failed to follow the jail's grievance procedures beyond the initial submission. It adopted the magistrate judge's conclusion that "Thomas failed to appeal any single grievance related to his allegations that he did not receive a medically

appropriate diet." The district court determined that Thomas's grievances were duplicative, sought inconsistent relief, and were contradictory. It also considered Thomas's attempt to appeal "six of the sixteen grievances he previously submitted," but determined that the appeal was not permitted by the jail's grievance policy.

We cannot say the district court clearly erred. The jail's grievance policy required Thomas to appeal an unsatisfactory response within five days. The district court's conclusion that he failed to properly appeal a single dietary grievance finds abundant support in the record. His sole attempt to appeal was contrary to the jail's policies, as Iliopoulos's response explained. As such, Thomas failed to exhaust his dietary claim.

Thomas's arguments to the contrary are unavailing. First, Thomas misconstrues the grievance procedures in order to argue that his sole attempt to appeal was never processed. He suggests that Iliopoulos, the grievance coordinator, should have "transmit[ted] those appeals to the proper officer" rather than provide a response. But Thomas submitted his so-called appeals as an initial grievance instead of an appeal, as Iliopoulos explained. In any event, Thomas fails to explain why it matters. He does not contend that his appeals were otherwise in compliance with the jail's procedures, nor does he suggest that the division commander might have reached a different conclusion.

Next, we disagree that the jail's grievance process was a "dead end." *Ross*, 578 U.S. at 643. In support of this argument, Thomas seems to suggest that the jail failed to give due

consideration to his grievances because it rejected some and deemed others duplicative. Again, he suggests that this prevented his grievances from being "processed," which he conflates with failing to "respond[]" at all. We have not found an instance of Thomas raising this argument before the district court. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that this Court does not consider arguments raised for the first time on appeal). But even if he had, the argument fails. An inmate's right to appeal is triggered simply by a "response." Thomas does not contend that his grievances went unanswered. Instead, he invents a requirement—that the jail "process" his grievances, no matter how frivolous or duplicative—that finds no support in the grievance procedures.

Finally, we are not persuaded that Thomas was prevented from exhausting his remedies such that they were unavailable to him. *See Ross*, 578 U.S. at 644. Curiously, Thomas suggests that Iliopoulos thwarted his ability to pursue an appeal by enforcing the jail's grievance procedures. He acknowledges that Iliopoulos deemed his appeals either untimely or improperly formatted, and nowhere does he contend that Iliopoulos erred in that conclusion. Instead, he contends that Iliopoulos "interfere[d]" with his ability to exhaust by "unilaterally opin[ing]" on the matter. Thomas did not suggest that Iliopoulos thwarted his attempts "through machination, misrepresentation, or intimidation," the concerns identified by the Supreme Court. *Ross*, 578 U.S. at 644. And even if we were inclined to recognize a category of unavailability not mentioned in

*Ross*, see *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (not deciding whether we can recognize additional categories of unavailability), we decline to do so here because Iliopoulos's conclusions were correct under the jail's grievance procedures.

Because Thomas failed to exhaust his dietary claim, we need not reach the district court's determination on the merits. We note that although the district court considered exhaustion only in the context of Paquette's motion for summary judgment, McInnis and Putnam also pleaded failure to exhaust as an affirmative defense in their first responsive pleading. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (explaining that this Court may affirm a district court on any ground supported by the record). Thomas has not argued that McInnis and Putnam waived the affirmative defense by not raising it in their summary-judgment motion. Nor do we read the district court's order as applicable to Paquette alone. Thus, we do not reach the merits of Thomas's diet claim because he failed to exhaust his administrative remedies, and all defendants were entitled to summary judgment on that ground alone.

## IV.

We **REVERSE** the district court's order dismissing Thomas's medication claim. We **AFFIRM** the district court's order granting summary judgment to Paquette, McInnis, and Putnam on

Thomas's dietary claim. We **REMAND** for further proceedings consistent with this opinion.