[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11477

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

FANE LOZMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-81119-DMM

_____

Before ABUDU, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Fane Lozman, proceeding pro se, appeals the district court's order granting Plaintiff-Appellee the United States' motion for summary judgment on its civil enforcement action against Lozman, brought under section 10 of the Rivers and Harbors Appropriations Act of 1899 (RHA), 33 U.S.C. § 403. Lozman argues that the district court erred in determining that the area of Lake Worth Lagoon where Lozman's container home and floating docks were located is a "navigable water" under the RHA. He also asserts that the district court's decision should be reversed because the United States improperly exercised its enforcement discretion under the RHA. Finally, Lozman contends that the district court abused its discretion by denying his request to use the court's electronic filing system. After careful review, we affirm.

**I.**

We review a district court's grant of summary judgment de novo. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291 (11th Cir. 2012). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Jones*, 683 F.3d at 1291–92. The party moving for summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. *Id.* at 1292. The

nonmovant must then rebut the movant with evidence of a genuine dispute. *Id.*

The RHA protects "the Nation's right that its waterways be utilized for the interests of the commerce of the whole country." *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 405 (1940), *superseded in part by statute as recognized in Rapanos v. United States*, 547 U.S. 715, 723–34 (2006). To do so, it generally prohibits the obstruction of any "navigable waters" of the United States without recommendation of the Chief of Engineers of the United States Army Corps of Engineers (the Corps) and authorization by the Secretary of the Army. *Lykes Bros. v. U.S. Army Corps of Eng'rs*, 64 F.3d 630, 633 & n.2 (11th Cir. 1995) (citing 33 U.S.C. § 403). Specifically, the RHA prohibits the "creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States" and makes it unlawful to build "any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established." 33 U.S.C. § 403.

The RHA's implementing regulations define "navigable waters" as "waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce." 33 C.F.R. § 329.4; *see also United States v. Harrell*, 926 F.2d 1036, 1039 (11th Cir. 1991). Although we afford "substantial weight" to

determinations of navigability made by federal agencies, "[c]onclusive determinations of navigability can be made only by federal Courts." 33 C.F.R. § 329.14(a). Once a determination of navigability is made, it "'applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity.'" *Kaiser Aetna v. United States*, 444 U.S. 164, 171 n.6 (1979) (quoting 33 C.F.R. § 329.4). Application over the entire surface means that federal jurisdiction extends to the land and waters below the high-water mark, even if portions of the waterbody are "extremely shallow, or obstructed by shoals, vegetation or other barriers." *Harrell*, 926 F.2d at 1040–41; 33 C.F.R. § 329.12(b). Bodies of water may become navigable, and private ownership does not destroy a finding of navigability under the RHA. *See* 33 C.F.R. § 329.8(a)(3); *United States v. DeFelice*, 641 F.2d 1169, 1172–75 (5th Cir. Unit A Apr. 1981) (relying on the regulatory definitions of navigability and finding jurisdiction proper under the RHA when a waterway was artificial and privately owned).[1]

In 2021, the United States brought its suit against Lozman for violating the RHA. The complaint alleges that Lozman built or installed structures in the Lake Worth Lagoon without authorization. The United States seeks to enjoin Lozman from building additional structures and to compel him to remove the structures that already exist. The structures in question are located on a portion of

---

[1] All decisions rendered by the Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

his property submerged in the Lake Worth Lagoon and are what Lozman refers to as his "floating home"—a shipping container supported by floating docks, which Lozman modified by adding windows, doors, stairs, and other enhancements.

On appeal, Lozman argues that the district court erred by determining that the area of the Lake Worth Lagoon where his floating home is located is a navigable water.[2] First, he relies on the Swamp and Overflowed Lands Act of 1850, ch. 84, 9 Stat. 519 (1850) (the Swamp Lands Act), to argue that his property does not count as a navigable water. In support, he cites a Florida Supreme Court decision concerning a title dispute between the state and a private corporation, which explained that "properties acquired by the state under the [Swamp Lands Act] do not cover or include lands under navigable waters." *Odom v. Deltona Corp.*, 341 So. 2d 977, 981 (Fla. 1976). Thus, he claims, because he can show Florida first acquired his land under the Swamp Lands Act, his property was not and cannot be considered a navigable water.

---

[2] We note that in a previous appeal brought by Lozman, we stated that Lake Worth Lagoon was a "navigable water" so that Lozman's "submerged parcel [was] subject to the [RHA]." *Lozman v. City of Riviera Beach*, 119 F.4th 913, 916 (11th Cir. 2024). Although we are bound "to follow a prior panel's holding" unless it is overruled or abrogated, this rule applies to holdings, not dicta. *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (per curiam). The prior appeal held that Lozman's claim challenging the City of Riviera Beach's comprehensive plan and ordinance was not ripe for judicial review because he never applied for the relevant permit. *Lozman*, 119 F.4th at 919. Because the "navigable water" determination was not essential to that holding, we are not bound by it and may conduct our own analysis. *See Gillis*, 938 F.3d at 1198.

But Lozman overlooks that "the test for navigability is not applied in the same way in . . . distinct types of cases." *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012). For example, navigability for state title purposes "is determined at the time of statehood." *Id.* But navigability for federal regulatory authority may include "waters that only recently have become navigable, were once navigable but are no longer, or are not navigable and never have been but may become so." *Id.* (citations omitted). As a result, Lozman's claimed legal authority pertaining to state title is inapt here because "any reliance upon judicial precedent must be predicated upon careful appraisal of the purpose for which the concept of 'navigability' was invoked in a particular case." *Tundidor v. Miami-Dade Cnty.*, 831 F.3d 1328, 1333 (11th Cir. 2016) (quoting *Kaiser Aetna*, 444 U.S. at 171).

To reiterate, for purposes of the RHA, "navigable waters" are "waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce." 33 C.F.R. § 329.4; *see also Harrell*, 926 F.2d at 1039. The United States presented evidence that the waters of Lake Worth Lagoon are subject to the ebb and flow of the tide and are used to transport interstate commerce. Specifically, Jonathan Pempek, a project manager with the Regulatory Division of the United States Army Corps of Engineers attested to both facts and observed that the floating home "mov[ed] with the action of the waves and tide."

Lozman did not dispute that the waters of the Lake Worth Lagoon are used to transport interstate commerce. And although he disputed at summary judgment that portions of Lake Worth Lagoon are subject to the tides because some areas are "regularly mudflats" that may be "exposed . . . for days on end," this assertion does not suffice to create a genuine issue of material fact when he conceded at his deposition precisely that the Lake Worth Lagoon is subject to tidal action. Lozman is unable to rebut the United States with evidence of a genuine dispute, and the United States is entitled to summary judgment because it is undisputed that Lake Worth Lagoon meets the RHA's definition of "navigable waters." *See Jones*, 683 F.3d at 1292; *33* C.F.R. § 329.4; *see also Harrell*, 926 F.2d at 1039.

To avoid this result, Lozman raises three additional arguments. First, he argues that the property where his floating home sits does not feature navigable waters because they are regularly mudflats at low tide. But navigability, once found, applies over the entire surface of the waterbody, *see Kaiser Aetna*, 444 U.S. at 171 n.6, and persists even if portions are "extremely shallow." *Harrell*, 926 F.2d at 1040–41; *33* C.F.R. § 329.12(b).

Second, Lozman implies that the district court erred because his floating home is on his private property. However, he faults the portion of the district court's summary judgment order discussing whether his floating home qualifies as a "structure" under the RHA, an issue that Lozman does not raise on appeal and has therefore abandoned. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir.

2008) (per curiam) ("[I]ssues not briefed on appeal by a *pro se* litigant are deemed abandoned . . . ."). Even if we construe his brief liberally[3] to argue that the Corps' authority under the RHA does not reach private property, this argument fails, too. Our precedent does not support that the Corps lacks jurisdiction over a navigable waterway because it is "privately owned." *See DeFelice*, 641 F.2d at 1173–74.

Finally, Lozman argues for the first time on appeal in his reply brief that the Corps had previously established a bulkhead line through his property, meaning that he was permitted to place his floating home shoreward of that line. Even though we read pro se litigants' briefs liberally, "we do not address arguments raised for the first time in a *pro se* litigant's reply brief." *Timson*, 518 F.3d at 874. We, therefore, decline to consider this argument and affirm the district court's grant of summary judgment to the United States.

## II.

Next, Lozman argues on appeal that the district court's decision should be reversed because the United States improperly exercised its enforcement discretion under the RHA. He claims Riviera Beach Councilperson Julie Botel influenced the Corps to initiate this action against him as "retaliatory payback" for a complaint Lozman filed with the Florida Ethics Board against Botel and for

---

[3] We construe briefs filed by pro se litigants liberally. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

which Botel received a censure and reprimand by Governor Ron DeSantis. He also argues that the existence of sunken vessels in nearby waterways not subject to RHA enforcement actions demonstrates that the Corps targeted him for selective enforcement.

We generally "will not consider issues which the district court did not decide" and which a party raises for the first time on appeal. *McKissick v. Busby*, 936 F.2d 520, 522 (11th Cir. 1991) (per curiam); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Here, the district court did not address any retaliation or selective enforcement claim by Lozman because he did not clearly raise it before the district court. In his response to the United States' motion for summary judgment, Lozman described the Corps' refusal to initiate enforcement actions against other vessels and requested that the district court "consider noting" the Corps' "unclean hands."

But Lozman did not assert that the Corps' selective enforcement precluded summary judgment, nor did he raise selective prosecution as an affirmative defense in his answer to the United States' complaint. While the district court had to construe Lozman's pleadings liberally, it was not required to serve as his de facto counsel by inferring that he sought to raise a selective prosecution claim. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). Thus, we decline to consider Lozman's argument that the Corps improperly exercised its enforcement discretion under the RHA.

### III.

Finally, Lozman argues that the district court erred in denying his request to file electronically in accordance with the Southern District of Florida's local rules. He contends that the Southern District of Florida's rule prohibiting pro se litigants from filing electronically using the Case Management/Electronic Case Filing (CM/ECF) system wastes the time of pro se litigants and clerk's office staff and violates due process. We "review a district court's application of local rules for an abuse of discretion." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009).

The Federal Rules of Civil Procedure permit pro se parties to file electronically "only if allowed by court order or by local rule." Fed. R. Civ. P. 5(d)(3)(B)(i). The Southern District of Florida requires all attorneys to file electronically and all pro se parties to file conventionally. S.D. Fla. L.R. 5.1(b) (referring "to Section 2C of the CM/ECF Administrative Procedures"); S.D. Fla. CM/ECF Administrative Procedures, § 2C ("Pro se litigants will not be permitted to register as Users at this time and must file their documents in the conventional manner."). The district court did not abuse its discretion in denying Lozman's motion to file electronically on CM/ECF because it followed the plain text of its local rule, which the Federal Rules of Civil Procedure specifically authorize. *See* Fed. R. Civ. P. 5(d)(3)(B)(i). Nor do we find that the local rule violated Lozman's due process rights when he does not identify how the rule deprived him of life, liberty, or property. *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) ("The Due Process Clause requires that a deprivation of life, liberty or property be

24-11477                 Opinion of the Court                 11

preceded by notice and opportunity for hearing appropriate to the nature of the case." (internal quotation marks omitted)).

## IV.

Accordingly, we affirm the district court's grant of summary judgment to the United States and denial of Lozman's motion to file electronically as a pro se litigant.

**AFFIRMED.**